(Decided December 21st, 1898.)

---

## THE COUNTY COMMISSIONERS OF FREDERICK COUNTY *vs.* THE MAYOR AND ALDERMEN OF FREDERICK.

*Taxation—Division of Taxes on Bonds between City and County—Jurisdiction of Equity—Practice in Equity.*

The Act of 1896, ch. 143, provides that all bonds and certificates of indebtedness made by any corporation and owned by residents of this State shall be subject to assessment and valuation at their market value for taxation to the owner thereof in the county or city in which he may reside, and that upon such valuation the regular rate of taxation for State purposes shall be paid and there shall also be paid on such valuation thirty cents, and no more, on each $100, for county, city and municipal taxation in such county or city of the State in which the owner may reside. *Held:*

1st. That no greater sum than thirty cents on each $100 can be levied on such bonds for both county and municipal taxation.

2nd.  That a municipal corporation which is included within the limits of a county and possesses the right to tax such property is entitled to a part of the tax of thirty cents levied by the county authorities on bonds owned by residents of such city.

3rd.  That since the statute does not fix the proportion in which the city and county are entitled to the tax of thirty cents on each $100, it must follow that each is entitled to one-half of said amount and each is authorized to levy and collect its proportion.

4th.  That in a case where the county authorities had levied and collected the whole amount of the tax assessable under the statute, the city is entitled to maintain a bill in equity for an account, and to recover the proportion of such tax to which it is entitled.

A defendant in equity cannot plead or demur to the whole bill and at the same time file an answer to it; the answer overrules the plea or demurrer and the latter is then out of the case.

Appeal from a decree of the Circuit Court for Frederick County (McSHERRY, C. J., and MOTTER, J.).

The cause was argued before FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Edward S. Eichelberger*, for the appellants.

*Hammond Urner*, for the appellee.

BOYD, J., delivered the opinion of the Court.

A bill in equity was filed by the Mayor and Aldermen of Frederick to require the County Commissioners of Frederick County to account for and pay over a proportion of the taxes collected by them under and by virtue of section 201 of Article 81 of the Code of Public General Laws of Maryland, as enacted by chapter 143 of the Acts of the General Assembly passed at the session of 1896.  The part of that section which presents

the question involved in this case is as follows: "All bonds, certificates of indebtedness or evidence of debt, in whatsoever form, made or issued by any public or private corporation . . . and owned by residents of Maryland, shall be subject to valuation and assessment to the owner thereof in the county or city in which such owners may, respectively, reside, and they shall be assessed at their actual value in the market; . . . and upon such valuation the regular rate of taxation for State purposes shall be paid, and there shall also be paid on such valuation thirty cents (and no more) on each one hundred dollars for county, city and municipal taxation in such county or city of the State in which the owner may reside." A similar provision is made for taxing certain stocks. The appellants levied a tax of thirty cents on the classes of property embraced in that section, including those held by residents of Frederick City, and the appellee claims that it is entitled to a proportion of the tax so levied and collected from the owners thereof, who reside within the taxable limits of Frederick City, whilst the county contends it is entitled to the whole of it. The jurisdiction of a Court of Equity to grant the relief prayed for is also questioned by the appellants and it will be convenient to discuss the questions involved in the case under the following heads:

1. Is the appellee entitled to any portion of this tax levied and collected by the appellants from securities mentioned in section 201, which were owned by residents of Frederick City?

2. If so, what proportion is it entitled to?

3. Has a Court of Equity jurisdiction to grant the relief sought?

1. The Act referred to leaves no doubt as to the county, city or municipal purposes on these securities, therein mentioned and that is therefore not involved in this case. Nor can there be any question as to *the amount of tax* that can be levied in addition to the State tax as the law says, "there shall also be paid on such valuation thirty cents (*and no more*) on each one hundred dollars for county, city and municipal taxation."

Unless the words " *and no more* " are to be treated as meaningless and omitted in reading the statute, it is impossible to say that the Legislature intended that any sum in addition to the thirty cents should be levied for county, city or municipal purposes on these securities, but on the contrary if plain, unequivocal language is to have its ordinary meaning given it, there is an express prohibition against exacting a greater tax. Courts have nothing to do with the wisdom of such provisions, so long as they do not conflict with the law, but Judges cannot, without keeping themselves in ignorance of questions discussed in the public press and elsewhere, be unmindful of the fact that there are various opinions as to the best method of dealing with such securities in tax laws. There are those who believe that the imposition of a smaller tax on them than is levied on tangible property will in the aggregate realize more than can be otherwise collected, by reason of the fact that it is oftentimes difficult to reach them when the owners seek to evade taxation, and the greater the tax the greater temptation to such persons to conceal their ownership of them, and others are opposed to taxing them at all. Whatever the reasons that influenced the members of the Legislature of 1896, certain it is that they intended to limit the rate to thirty cents on the one hundred dollars in addition to the State tax, and that they did not intend that any incorporated town or city within the limits of a county of the State should impose any tax on those securities in addition to the thirty cents.

The power of the State through the Legislature to deprive an incorporated city or town of the right to levy taxes upon a particular class or classes of property within its corporate limits need not be discussed by us, as the question presented is not so much what the Legislature had the right to do as what it actually did and intended to do by the passage of this law. Article 81, title "Revenue and Taxes," of the Code of Public General Laws, was in many respects materially amended by chapters 120, 141, 142, and 143 of the Acts of 1896—all of which were approved by the Governor on the same day. By those

Acts a new assessment of property throughout the State was provided for, and various provisions were inserted as to what should be taxed, what exemptions allowed, how the assessments should be made, etc. Section 194 of chapter 120 provided that the securities above named and all certificates of indebtedness issued by any individual or firm should be assessed and valued according to the rate of interest stipulated to be paid, but section 201 of chapter 143 repealed it so far as the securities now under consideration are concerned, and made the provision we have already stated. If the law had remained as provided for in section 194, State, county and Baltimore City taxes would have been levied on those securities as taxes on other property, excepting that the values were fixed according to the rate of interest stipulated to be paid, and the appellee (as well as other incorporated cities similarly situated) would also have been authorized to levy and collect taxes on such of those securities as were owned by those residing within its taxable limits. Its charter expressly authorized and empowered it " to levy and collect all necessary taxes on the real and personal property within the taxable limits of the corporation, as are now assessed and taxed within said limits for county and State purposes,. or upon any assessment hereafter made in pursuance of law, of the real and personal property within the taxable limits of the corporation." If then this law did not prohibit it, it would seem clear that the appellee had the right to assess and tax such of these securities as are owned by persons residing within its taxable limits, but as the statute does in terms prohibit the collection of more than thirty cents on each one hundred dollars for *county, city and municipal* taxation, it is equally clear that if the county is entitled to the whole of the thirty cents the city is excluded from collecting any tax on such securities. Was such a result within the contemplation of the statute?

As the property is of the character that was originally assessable in this State, and was continued to be by chapter 120 of the Acts of 1896, although on a some-

what different basis, and was liable to taxation under
the charter of the appellee, it should not be exempted
from taxation by the appellee, unless the language of
the law clearly requires such a construction.   We can
see no valid reason why the city of Frederick, possess-
ing such powers of taxation as the Legislature has con-
ferred upon it, should not be permitted to tax its resi-
dents for property within its corporate limits, which the
county is permitted to tax for its purposes.   It is true
that the city is a part of the county and that the prop-
erty within the limits of the former is liable to taxation
for county purposes, but the residents of a city, such as
Frederick, probably receive as much, if not more, pro-
tection and direct benefits from the city than from the
county, and they ought to contribute their proper pro-
portion of taxes necessary for the city government.
The same can be said of residents of other cities in the
counties of the State, and therefore we are unable to
see any substantial reason why the Legislature should
thus discriminate against such cities, and are thus
strengthened in our opinion that it did not so intend.

That the expression " *city and municipal* taxation " is
not confined to Baltimore City alone may readily be seen
by a careful study of the provisions of Article 81 of the
Code and the amendments thereto.   Under the rule of
interpretation, as set forth in section 11 of Art. 1 of the
Code, that " the word county shall be construed to
include the City of Baltimore unless such construction
would be unreasonable," it was not necessary to insert
these words to enable the authorities of Baltimore City
to impose such tax.   But if it had been intended to use
language that would in terms confine the tax to the
counties and *Baltimore City*, it could have been easily
so expressed by the Legislature, as it is in other places.
Section 1 of Art. 81, as codified in the present and for-
mer codes, reads that " all State and county taxes, and
*all taxes in the City of Baltimore*, shall be levied upon
the assessment heretofore made and such further assess-
ments as may hereafter be made agreeably to law unless
otherwise directed," etc.   As amended by chapter 120

of the Act of 1896, it reads that " all State and county taxes and *all municipal taxes* shall be levied upon the assessments made in conformity to the provisions of this article, and in conformity with all laws relating to revenue and taxes, and not embraced in this Article." It is not likely that the Legislature made this change in the language used without some object in view, but the presumption is that when they repealed the section which referred to State and county taxes, and those in the City of Baltimore and re-enacted it by referring to State and county taxes and *all municipal* taxes, they meant what they said and did not intend to limit the latter to municipal taxes in Baltimore City, but intended to include municipal taxes of other cities, so far as the Act was applicable to them. These Acts of 1896 provided a general scheme of assessment for State, county and all municipal taxation, except in so far as otherwise provided, and undertook to define what property was liable, what was exempt from taxation, the methods of assessing stocks, bonds, etc.

There are many places in them where Baltimore City is named—thus showing that when the Legislature meant it alone, it used the name of Baltimore. In section 146 A, which provides for a tax of eight per centum upon the gross amount of interest covenanted to be paid on mortgages, of which one-fourth is payable to the State and the other three-fourths to the county wherein the mortgage is recorded, or to the City of Baltimore if recorded there, the Legislature left no question about it and used language that was only applicable to that city and not to other cities in the State. For example, it said " to be collected by the authorities as other taxes for county and State purposes in the several counties and municipal and State taxes are collected in Baltimore City." The whole of the tax thus collected is payable to the State and to the counties, or Baltimore City, as the case may be, but the Legislature was then dealing with securities that for years had been exempted from taxation in this State and not with those that many, if not all, of the cities and towns in the State previously had authority to tax.

As section 201 uses the term " *county, city and municipal taxation,*" it would be a narrow construction to say that it only applied to Baltimore City, especially when we find that when the Legislature meant that city alone, it generally so stated in the statute. This section, in providing for taxation on shares of stock of foreign corporations, etc., owned by residents of this State, at the same rate that is provided for the securities above named, used the same language—" thirty cents (and no more) on each one hundred dollars for county, city and municipal taxation." Thus we see that in the only instances in which the Legislature named a fixed rate of taxation in addition to the State tax, with an express prohibition against a higher rate, it declared that it should be for *county, city* and *municipal* taxation—thus including the three kinds of taxation usually levied in this State on such property. Having prohibited more than thirty cents on each one hundred dollars, which prohibition, as we have said was evidently intended to apply not only to counties and the City of Baltimore, but to all corporations authorized to levy taxes, it was but just to provide that all such corporations as had the power to tax such securities should get the benefit of the thirty cent tax on them when owned by residents of such corporations, and the Legislature could not have used more comprehensive language to so declare its intention. We are therefore of the opinion that the appellee is entitled to part of this tax collected from the residents of that city.

2. Under our construction of the statute the fund realized from this tax of thirty cents from the securities of residents of the taxable limits of Frederick City belonged to the city and county, and, as the statute does not fix the proportions they are entitled to, it must necessarily follow that each is entitled to one-half—just as when a fund is given to two persons or corporations and no provision is made for the proportions, each will take a moiety. It would be impossible under the circumstances to divide the fund in any other way. The assessable bases for the county and for the city, respec-

tively, may vary from year to year and so may the aggregate amounts of the respective levies. The agreed statement of facts shows that the proceeds of the county levy for the year 1898 are largely in excess of those for the last levy by the city authorities—the former being nearly five times as much as the latter, but that could not be a guide. The agreement also shows that the city tax rate was one dollar and ten cents whilst that of the county was eighty-four cents on the one hundred dollars. If either could be adopted as a basis for proper proportions, the latter would seem to be more equitable. But both would necessarily vary from time to time and neither the county nor the city authorities could tell what proportion of the thirty cents they were entitled to, certainly not without some concerted action in the levies. The Legislature having therefore provided that the two were entitled to the fund realized from this tax, and having failed to name the proportions, we must assume that it was intended to be evenly divided and each is therefore entitled to fifteen cents on each one hundred dollars of such securities owned by residents of the city.

3. The only remaining question we need consider is the jurisdiction of a Court of Equity to grant the relief sought. The defendant filed a plea denying the jurisdiction of the Court, a demurrer and answer to the whole bill at the same time. Under our equity rules a defendant may answer, plead or demur to a bill " and he may plead or demur to the whole bill or a part thereof, and he may demur to part, plead to part and answer as to the residue." Code, Art. 16, section 135. But we are not aware of any practice in this State which will permit him to plead or demur to the *whole bill* and also at the same time to file an answer to it. By his plea he prays judgment of the Court as to whether he shall be required to make further answer to the bill, and the demurrer, while admitting the facts properly stated in the bill, interposes an objection to the plaintiff's further proceeding or requiring the defendant to answer. Hence if he answers to anything as to which he has pleaded, he

thereby overrules his plea and the same principle is
equally applicable to demurring and answering and to
demurring and pleading to the whole bill or to the
same part of the bill. *Hannah K. Chase's case*, 1 Bland
217; *Miller Eq. Proc.*, section 134; 6 *Ency. of Pl. and Pr.*,
414. The result is that the plea and demurrer filed in
this case were overruled by the filing of the answer, and
must be treated as out of the case. The answer does,
however, deny the jurisdiction of the Court and hence
the withdrawal from our consideration of the plea and
demurrer can make but little difference, excepting as
to the sufficiency of the bill, outside of the question of
jurisdiction which the demurrer would have reached.

Having determined that the tax authorized by this
statute for county, city and municipal purposes on the
securities owned by residents of the city of Frederick
belongs to the county and city, we think a bill in equity
will lie to obtain the relief sought on several grounds.
The bill alleges that the County Commissioners had
levied the full rate of thirty cents on each one hundred
dollars of said securities, and had delivered the levy to
the county treasurer, who was proceeding with the
collections, that the appellee had completed its assess-
ment which included the securities thus held by the
residents of the city, and was about to make its levy;
that the levying by it of its equitable proportion of said
thirty cents would, in view of the previous levy of the
County Commissioners of the full rate of thirty cents
upon the same property, make an aggregate taxation in
excess of the rate allowed by law and would produce a
condition of great confusion and would impede the col-
lection of taxes both by the appellants and the appellee,
etc. Under our views of this law the appellants are only
entitled to one-half of the amount so levied on these
securities of residents of the city, and the city is entitled
to the other half. If the city can sue at law for its
share of the amounts collected by the county, it is ap-
parent that a great number of suits would likely be
required. In the action for money had and received,
if that could be sustained, there could be no recovery

until the money was actually received by the defendant, and it would be very difficult, if not impossible, for the city authorities to know just what had been collected and when the various amounts were collected.

But under the circumstances could the city sue the county at law? The money was not collected under a joint levy by the two, but through the excessive and illegal (to the extent of one-half) levy of the county authorities. The county did not undertake to collect any part of the tax for the city, but claimed it all for itself. The city has therefore no strictly *legal* claim against the county for its proportion of the fund, but it is merely an equitable claim which is worked out through the fact that the county is taking from the residents of the city what in equity belongs to the city by virtue of this statute, as construed by us. Although the city might proceed for its proportion against those who have paid the county the whole of the thirty cents, and they could probably recover it back from the county under sec. 9 of Art. 25 of the Code, as construed in the case of *G. C. C. and I. Co.* v. *County Commissioners,* 59 Md. 255, it would create great confusion and almost endless litigation. The agreed statement shows that the valuation of the securities is the same for the county and city purposes. In equity and on every principle of justice the money is due the city, and in order to get it, it should not be compelled to institute numerous suits against its citizens to recover what the county has illegally taken from them and thus compel them to sue the county, when by avoiding this circuity of actions a Court of Equity can require the county to account directly with the city, which is ultimately entitled to the money, which in our opinion can be done under the peculiar conditions existing, especially as the statute gives the fund in controversy to the county and city. Although we think the county and city authorities can each levy and collect one-half of the tax allowed by the statute which we think would be the proper course to pursue yet, if one does collect the whole, the fund thus collected might well be treated as if belonging to

joint owners and the one made to account to the other in equity, as joint tenants, tenants in common, etc., do.

A refusal by a Court of Equity to grant relief must not only involve the plaintiff in a multiplicity of suits, but subject many innocent persons to costs and the probable risk of paying the same tax twice, unless they engage in further litigation and possibly even then, and as the city is entitled to the proportion of the fund claimed, the case would seem to call with peculiar force for the interposition of a Court of Equity.  So without prolonging this opinion by giving other reasons as grounds for that jurisdiction, some of which have been suggested, we must affirm the decree below.

> *Decree affirmed with costs above and below to be paid by the appellants.*

(Decided December 21st, 1898.)