# THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL. *vs.* BARTLETT S. JOHNSON.

*Seat in Stock Exchange Not Liable to Taxation.*

A seat in the Baltimore Stock Exchange is not *property* within the meaning of that term as used in Article 15 of the Bill of Rights and in the revenue laws of the State, and is therefore not liable to assessment and taxation.

Appeal from Baltimore City Court (STOCKBRIDGE, J.)

The cause was argued before MCSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Olin Bryan* (with whom was *Wm. Pinkney Whyte* on the brief), for the appellants.

*W. Burns Trundle*, for the appellee

BOYD, J., delivered the opinion of the Court.

The Appeal Tax Court of Baltimore City assessed for taxation a seat in the Baltimore Stock Exchange, held by the

appellee, at the sum of seven thousand dollars for the year
1903. In pursuance of the statute he appealed to the Balti-
timore City Court which passed an order by which the assess-
ment was vacated and annulled, and from that order this ap-
peal was taken. It is contended on the part of the appellee
that a previous determination of this question, in reference to
an attempted assessment against him for the years 1901 and
1902 precludes the appellants in this proceeding, as it is *res
adjudicata*, but it will not be necessary for us to pass on that
branch of the case by reason of the conclusion we have
reached on the main question, which may be thus stated: "Is
a seat in the Baltimore Stock Exchange 'property' within the
meaning of that term, as used in Article XV of the Bill of
Rights, and in the revenue statutes of this State?"

It would be useless to undertake to reconcile the decisions
of the various Courts which have been called upon to deter-
mine how far a seat in an exchange of this character can be
said to be "property," or to point out in what particulars they
have differed. The learned Judge below correctly determined
that by the great weight of authority it cannot be said to be
merely a personal privilege but must be regarded as property,
although in a limited and qualified sense. Among the cases
in which such an interest in an exchange has been held to be
property for some purposes are *Platt* v. *Jones*, 96 N. Y. 29;
*Powell* v. *Waldron*, 89 N. Y. 328; *Hyde* v. *Wood*, 94 U. S.
523, and *Page* v. *Edmunds*, decided by the Supreme Court of
the United States in January of this year. The question has
generally been considered in cases in which it was claimed that
the interest of the holder of the seat passed to his assignee or
trustee in bankruptcy, or where it was sought in some way to
subject such interest to the payment of debts. In the one
last mentioned the Supreme Court held that, under the pro-
vision in section 70 of Bankrupt Act of 1898, that the trustee
shall be vested with the title of the bankrupt in "property
which prior to the filing of the petition he could by any means
have transferred," the power of the bankrupt to transfer it was
sufficient to vest it in his trustee. As that case arose in

Pennsylvania, the Court reviewed at length *Thompson* v. *Adams*, 93 Pa. St. 55, and *Pancoast* v. *Gowan, Ibid*, 66, in both of which it was said that a seat in an exchange could not be seized under an execution. The Supreme Court did not deem it necessary to determine that question, but said in speaking of the opinion in *Thompson* v. *Adams*, that if the Court meant to say that the seat was not property *at all* they could not concur. In *Barclay* v. *Smith*, 107 Ill. 349, and *Lowenburg* v. *Greenebaum*, 99 Cal. 162, it was also held that such seats were not property subject to judicial sales.

Although counsel for both sides showed commendable zeal in the preparation of this case, and cited many authorities which seemed to them to reflect on some of the questions involved, we have not been referred to a single decision in which a seat in an exchange of this kind has been taxed. *In re Hellman's estate*, Sup. Court, N. Y. App. Div., decided in 1902, the Court said: "That a seat in this exchange is property and that the Legislature would have power to impose a tax upon the transfer of such property is conceded, but the Legislature in defining personal property, which is taxable under the tax law, has not included a right to a seat in the exchange as property that shall be taxable, and for that reason the Court below had no authority to impose the tax." And in *People* v. *Feitner*, 167 N. Y. 1, the Court of Appeals held that a seat in the New York Stock Exchange was not personal property within the meaning of the tax laws of that State. In *San Francisco* v. *Anderson*, 103 Cal. 69, it was held that "A seat in the San Francisco Stock and Exchange Board is not taxable." The Court said "It is a mere right to belong to a certain association with the latter's consent, and to enjoy certain privileges and advantages which flow from membership of such association. Those privileges and advantages cannot be transferred without the consent of the association and a forced sale of them would not give the purchaser the right to occupy said seat. It is too impalpable to go into any category of taxable property. In *Board of Commissioners* v. *Rocky Mountain News Company*, 15 Colo. 189 (61 Pac. 494), it was held

that a contract of membership in an associated press was not property subject to taxation within the intention of the laws and constitution of Colorado, although in that case the interest was first valued at twenty-five thousand dollars, and reduced by the lower Court to twenty thousand dollars. In *Hart* v. *Smith*, 64 N. E. Rep. 661, the Supreme Court of Indiana held that the good will that attaches to the business of conducting a newspaper belonging to a co-partnership is not, in and of itself, property within the constitutional provision that the General Assembly shall provide by law for a uniform and equal rate of assessment and taxation. In *State Board* v. *Holliday*, 150 Ind. 216 (s. c. 42 L. R. A. 826), it was held that taxation of paid up, or non-forfeitable and partly paid up, life insurance policies was not provided for by statute, although there was a provision that "all property within the jurisdiction of this State, not expressly exempted, shall be subject to taxation," and after specifying what should be embraced in the schedules of property for taxation, it provided that "all other goods, chattels and personal property, not heretofore specifically mentioned, and their value, except properties specifically exempted from taxation," should be included. In *People* v. *Roberts*, 159 N. Y. 70 (s. c. 45 L. R. A. 126), copyrights and patent rights were held to be exempt, but the good will of a corporation, which was the result of carrying on business in that State, was said to be taxable. We might continue at great length citations of cases illustrating the views taken by the Courts on such questions, but those we have cited are sufficient to show that, as a rule, the Courts in this country have held that such a right as that now being considered is property, but of such a nature that the terms usually found in tax laws do not embrace it. In the absence of some determination by this Court directly bearing on the question, we have thought it proper to give the trend of the decisions of other Courts before discussing the provisions of our own laws, which we will now do.

The learned counsel for the appellants relies on the provision in the Declaration of Rights that "every person in the

State, or person holding property therein, ought to contribute his proportion of public taxes for the support of the government, according to his actual worth in real or personal property," and especially on the language used by the statute. Section 2 of Article 81 (Revenue and Taxes), after enumerating various kinds of property to be assessed, contains the clause so much relied on, which is : "All other property of every kind, nature and description within this State, except as provided by the fourth section of this article, shall be valued and assessed for the purposes of State, county and municipal taxation to the respective owners thereof in the manner prescribed by this article." That section, as now in force, was passed in 1896, but the same language was used when the Code of 1888 was adopted, and has been since the Act of 1874. Prior to 1874 the statute did not use so many words, but in the Code of 1860 it read "And all other property of every description whatsoever shall be liable to assessment and taxation ;" and those terms were used at least since the year 1852, back of which we have not deemed it necessary to look. There is therefore no material difference between the language now used and that which was adopted as early as 1852.

The "Baltimore Stock Board" was organized on the 29th of January, 1844, and on the 14th of May, 1881, its name was changed to "The Baltimore Stock Exchange." This case was argued in this Court on the 59th anniversary of its organization, and yet there was never any attempt to assess seats in this exchange until the assessments for 1901 and 1902 were made. That it is not necessarily conclusive of the question, but it is an important circumstance when we remember that the language now relied on is in substance the same that has been in the statutes for so many years. The value of a seat may change from year to year, but if it is property *now*, within the meaning of our tax laws, it has been during all those years. If it was, not only have the owners of those seats been placed in a position, by the construction put on the law by the tax officers, by which they omitted them from their schedules of personal property, as provided for in section 173 of

Art. 81, although each swore that his schedule contained "a true, full and complete list of all real and personal property held or belonging to me," etc., but the tax officers themselves have failed to discharge their duties. Not only the original assessors were required to add any property omitted from the schedules, but the Appeal Tax Court and assessors appointed by them are required to take steps to place unassessed property on the books. It cannot be assumed that during these many years all the tax officers of the city were in ignorance of the fact that the Baltimore Stock Exchange and other such exchanges were in existence, or that the seats were not taxed. We certainly can assume that all of the holders of such seats would not intentionally have violated the law in making up their schedules, and we are equally positive that the tax officers throughout all those years would not have wilfully failed to discharge their duties. In view of the fact that the testimony shows that such seats had never been assessed before 1901, and knowing, as every intelligent person who reads newspapers must know, that such persons as are qualified to fill such positions as Judges of the Appeal Tax Court of Baltimore City, could not, during all these years be ignorant of the existence of those seats, we must assume that they have not heretofore been attempted to be assessed because the law officers and officials of the tax department of the city have not deemed them to be taxable under existing laws. During these years the Legislature has frequently had questions of taxation before it, and has paseed many laws in relation thereto. When the last general assessment law was passed (1896), this exchange had been in existence over fifty years, and the rights of the members therein had never been taxed. Property intended to be taxed was designated with more particularity than had been previously done, and the effort to reach property which had escaped taxation, and which was intended to be taxed, is manifest from the statute itself. Our present tax laws have gone into considerable detail as to the method of taxing shares in incorporated companies, and collecting the taxes levied thereon. And although the members

of the Legislature and the city and State tax officers may be presumed to know that these seats have not been assessed, the Legislature has not attempted, *in terms*, to have them taxed, and, as we have seen, the construction placed on the tax laws during this great length of time seems to have been that they were not taxable.    It was said in *Hays* v. *Richardson*, 1 Gill & Johnson, 366, in speaking of the construction of a statute "this contemporaneous unvarying construction of the Act of Assembly for sixty years ought not to be disregarded, but upon the most imperious and conclusive grounds."    See also *Harrison* v. *State*, 22 Md. 468; *Stuart* v. *Laird*, 1 Cranch. 299; *McPherson* v. *Blacker*, 146 U. S. 1.    When, therefore, the language of the statute relied on is not now more comprehensive than it has been for half a century, and the thing sought to be taxed has been in existence during all that time, but has never been taxed, there ought to be some valid and substantial reason assigned before the new construction of the statute, now contended for, should be adopted.    Has that been done ?

It cannot be said that the value of a seat in this exchange has now become so fixed that it can be more readily ascertained.    This record discloses that as late as 1897, a seat was sold for sixty dollars, and in the attempt of the Appeal Tax Court to tax them they assessed them for 1901 at $3,500, for 1902 at $10,000, and for 1903 at $7,000, and one of the witnesses who was examined, testified that he thought his seat would bring, if sold at that time, $5,000.    It is manifest that their value is not only constantly varying, and perhaps to do full justice to all parties would have to be revalued every year, but it must depend upon the number of vacancies there happen to be and the demand for admission.    We do not find in the record any provision in the Constitution or by-laws fixing the number of seats that the exchange can have, but in answer to the question "How many seats have you ?" one of the witnesses said "86 or 87 ; that includes alternates ; probably there are half a dozen alternate members," and he also said "they are not sold, as a rule, unless a man retires from

business." The exchange is not incorporated, declares no dividends "and was formed for the purpose of affording to its members being stockbrokers facilities for the transaction of bnsiness by providing them with a convenient exchange or salesroom rented for that purpose, in which room its meetings are held." A member cannot voluntarily dispose of his membership, unless the proposed transferee is elected by the governing committee. No transfer is permittted until all dues to the exchange are paid in full, and if the owner is indebted to any member he cannot transfer his membership until he pays such indebtedness, if a protest is filed. In case of death, the seat is disposed of by the committee on membership, and after paying the claims of the members it pays the balance to the legal representatives of the deceased. The member does not even hold a certificate of membership, and there is no evidence at all of it beyond being enrolled as a member. Stockbrokers are licensed by the State for which they pay a license tax. It is thus apparent that while a membership in the exchange is in a sense property, it is qualified and limited and lacks one of the most valuable and usual characteristics of property—the right of disposing of it as the owner deems proper, so long as he violates no law.

But section 2 of Article 81 states *how* "all other property of every kind, nature and description within this State, except," etc., shall be valued and assessed—that is to say, "*in the manner prescribed by this Article.*" How is this seat in this exchange to be valued and assessed under that provision ? It is not tangible personal property and hence cannot hardly be said to be assessable as that is, " at its full cash value without looking to a forced sale." If the exchange was incorporated and stock was issued, the State Tax Commissioner would assess it. By section 194 certificates of indebtedness issued by any individual or firm are assessed and valued according to the rate of interest stipulated to be paid—if they bear six per cent they assessed at fifty per cent of their face value; if five per cent at 41⅔ per cent of their face value, and so on as to other rates, and the section concludes that " such upon which no

interest shall be actually paid, shall not be valued and assessed at all." Then section 201 provides for valuation and assessment of bonds, certificates of indebtedness, or evidence of debt, in whatever form made or issued by public or private corporations, or by a State (other than Maryland), territory, etc., at their actual market value, upon which the regular rate of taxation for State purposes is to be paid and thirty cents (*and no more*) on each one hundred dollars for county, city and municipal taxation, but "such upon which no interest shall be actually paid shall not be valued at all." Other illustrations might be given, such as the tax on mortgages, on stock of foreign corporations, etc., to show not only how the assessments of personal property vary as "prescribed by this Article," but as reflecting upon the intention of the Legislature in the use of the language relied on, in determining whether such property as a seat in this exchange was intended to be included, these and similar provisions throw much light on the subject. Can it be supposed that the Legislature intended to tax such a membership in an exchange as this is shown to be at what it cost the member, or at what he could get for it, when it has provided that on bonds, etc., issued by corporations or some other State or country only thirty cents on each hundred dollars, on a valuation fixed by its market value, shall be paid for county, city and municipal taxation, and those upon which no interest is paid are not to be valued at all? Or that it intended such tax as is claimed in this case when it provided for the assessment of certificates of indebtedness issued by individuals or firms at the rates provided for by sec. 194? If so, then it would require a broker to pay taxes on the amount of money he has invested in order to acquire proper privileges for the conduct of his business, from which money he receives no income whatever, and that too when he does not even have a certificate of membership or any evidence of his ownership excepting that he is enrolled as a member, at a much higher rate than it has fixed for other incorporeal property. He may own one hundred thousand dollars of bonds, or shares of stock in foreign corporations,

on which he receives interest or dividends, and can only be required to pay the city of Baltimore only thirty cents on each hundred dollars thereof, but if he has a seat in this exchange, for which according to the evidence, he might get from sixty dollars to ten thousand dollars, depending upon whether there are vacancies or a demand for admission, he must pay the regular rate of taxation on its value, under the theory of the appellants, notwithstanding he pays the State a license fee for carrying on his business.

The learned Judge below, as reflecting upon the question whether the Legislature intended to impose a tax on this property, pointed out in his opinion the difficulties that would be in the way of enforcing payment under the existing tax laws, but, although there is force in his suggestions, we will not stop to discuss those provisions. Seeing what has been the uniform and unvarying construction placed on the statutes providing for taxation in this State, for over fifty years, by the tax officers of the State and the City of Baltimore, and apparently by the Legislature itself, and having before us such statutes as we have referred to, which provide different methods of taxation of property much nearer akin to that under consideration than tangible personal property is, we are forced to the conclusion that the Legislature did not, by the statute now in force, intend to tax seats in this exchange, and, if it did, it is utterly uncertain as to what rate it intended they should be taxed, although it has established rates for other incorporeal property. That there can be no justification in taxing them in the method attempted seems to be perfectly clear, when the provisions for other property such as we have mentioned are considered, and it would be impossible to place them in the category of bonds, stocks, evidences of indebtedness, etc., for the purpose of taxation under existing laws, as they are not embraced by any of them. We are therefore of the opinion that notwithstanding the broad language of the statute, the Legislature has not only not made provision as to *how* property such as this should be taxed, but as yet has expressed no intention of taxing it.

It is not necessary to discuss at length the meaning of the fifteenth article of the Declaration of Rights, which has so frequently been before us.   It is well settled that there may be "property" in the State which is not covered by that provision.   In *State* v. *P. W. & B. R. R. Co.*, 45 Md. 379, we said "A franchise is a special privilege conferred by the State on certain persons, and which does not belong to them of common right, and although the franchises of a company may be considered in one sense property, and valuable property, yet they are not property in the meaning of that term as used in the Bill of Rights."   In some of the statutes above cited we have seen that what is undoubtedly property is exempt from taxation, when no interest or dividends are paid, and different rates of valuation, as well as exemptions, are provided for and have been sustained by this Court.   *Faust* v. *Building Association*, 84 Md. 186 ; *Allen* v. *Bank*, 92 Md. 509 ; *Frederick County* v. *Frederick City*, 88 Md. 654 ; *Simpson* v. *Hawkins*, 82 Md. 478, and other cases that might be cited.

> *Order affirmed, the appellants to pay the costs.*

(Decided April 1st, 1903.)