MARY HARRISON *vs.* GEORGE HARRISON.

*Pleading: pleas; effect of; answer covering same matter; waiver. Divorce: residence; intention of parties; jurisdiction. Evidence; hostile witnesses.*

A defendant, by answering anything to which he has pleaded, overrules his plea. A plea is only *why* a defendant should not answer, and an answer waives a plea to the same matter.

p. 611

Where a defendant in a suit for divorce *a vinculo* filed pleas to the jurisdiction and at the same time filed an answer in person to an order *nisi* allowing the counsel fees and alimony, in which answer, besides covering the same matter alleged in the pleas, concluded, "6. That this defendant further relies upon a plea to the jurisdiction filed on the same date as this answer," it was *held,* that this recital amounted to a waiver of the pleas to the jurisdiction, because by the pleas or answer, or both, the jurisdiction of the Court to hear the matters in issue was distinctly raised; and it was further *held,* that the testimony upon the question having been taken and embodied in the record, it could properly be considered and disposed of by the Court of Appeals.

p. 612

A party may be bound by a hostile witness, as to matters lying particularly within his own knowledge, on which he is not successfully contradicted.

p. 613

It is the policy of the State to discourage rather than to encourage divorce proceedings.　　　p. 612

In questions of residence the intention of the party with regard to maintaining his right to vote is admissible though not conclusive.　　　p. 614

While it is permitted to an individual to testify as to his intent, such intent is nevertheless more satisfactorily shown by his action than by his words.　　　p. 614

A domicil for divorce is not a favorite of the law.　　　p. 614

A shifting place of residence to avoid or occasion delay against the service of profess is not favored.　　　p. 614

There is a *prima facie* presumption of law that where a person actually lives is his domicil.　　　p. 615

In divorce proceedings, the fact that the defendant was actually residing in Baltimore City, and had written a letter to the complainant in which he stated that business compelled him to *live* in Baltimore City was held to establish that his place of residence was the City of Baltimore, in spite of his declared intention to retain his right to vote in Baltimore county.　　　pp. 614-615

Where the uncontradicted evidence was that the complainant in divorce proceedings actually resided in Baltimore City and that she had rented out her house in Baltimore county for a term, with the right to the lessee to renew the same and reside there as long as he chose; that she had taken a house in the City of Baltimore, and testified that she became a resident of the City of Baltimore for the purpose of entering her son in the Polytechnic Institute, which she could do free of cost as a resident of the City of Baltimore, it was *held*, that her evidence as to her becoming a resident of Baltimore City being uncontradicted and consistent, it was competent for her to file and maintain a bill for divorce *a vinculo* in that jurisdiction.　　　p. 616

Where a defendant in divorce proceedings raised the issue of the Court's jurisdiction by alleging his residence in a different jurisdiction, the burden of proof is upon him to sustain the allegation.　　　p. 615

While for the jurisdiction of a Court to attach in divorce pro-
ceedings no certain or definite duration of residence is re-
quired for the parties to acquire a domicil, it is necessary
that there should be a clear, definite intent and act done in
the execution of their intent.                    p. 616

*Decided February 29th, 1912.*

Appeal from the Circuit Court No. 2 of Baltimore City
(STUMP, J.).

A bill for divorce *a vinculo matrimonii* was filed in the
Circuit Court No. 2 of Baltimore City by Mary A. Harrison
against her husband, George Harrison for a divorce for
statutory causes, desertion and cruelty; the complainant
alleged her residence and that of the defendant to be in
Baltimore City. Besides permanent alimony the bill prayed
for alimony *pendente lite* and counsel fees. By an order *nisi*
the defendant was ordered to pay the alimony *pendente lite*
and counsel fees. The defendant filed pleas to the bill on
the ground of want of jurisdiction, alleging that both parties
were residents of Baltimore county, and that there was
pending between the same parties in the Circuit Court for
Baltimore county a bill of complaint for a divorce *a mensa
et thoro* and permanent alimony. The same day the defend-
ant, in his own person, answered the order *nisi* for the pay-
ment of the alimony and counsel fees, and in the answer
raised the same questions covered by his ·plea, concluding:
"6. That this defendant further relies upon a plea to the
jurisdiction filed on the same date as this answer." The
complainant in her replication to the defendant's plea stated
that her residence was in Baltimore City and that the pro-
ceedings for divorce *a mensa* in the Circuit Court of Balti-
more County had been since dismissed, and by a general
replication joined issue on the matters alleged in the answer
of the defendant, to the order *nisi* directing the payment of
the alimony and counsel fees. The case was placed on the
trial calendar for hearing on the question of alimony *pen-
dente lite* and counsel fees, and being held to be at issue on

these points testimony was taken and the Court decreed that the plea to the jurisdiction should be sustained and the bill of complaint dismissed with costs to the defendant without prejudice, etc. From which decree this appeal was taken.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCK-BRIDGE, JJ.

*Thomas J. Mason,* for the appellant.

*T. Scott Offutt* and *Z. Howard Isaac,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

In this case a bill for divorce *a vinculo matrimonii* was filed by Mary A. Harrison against George Harrison, her husband. In the bill she alleges: (1) her residence in this State for all of her life, and that at the time of the filing of the bill both herself and husband were residing in the City of Baltimore; (2) that the parties have seven children; (3) abandonment and non-support by the husband; (4) cruel and vicious conduct on the part of her husband; (5) that her husband has been guilty of adultery; and (6) the means or property of the defendant. The prayers of the bill are for a divorce *a vinculo;* care and custody of minor children; permanent alimony; and alimony *pendente lite* and counsel fees.

Upon the filing of the bill the Circuit Court No. 2 passed an order *nisi,* allowing counsel fees and alimony, *pendente lite.*

The defendant having been summoned appeared specially by counsel and filed three pleas, the first and third pleas being to the jurisdiction, in which the defendant set forth that the residence of the parties to the suit was in Baltimore county and not in Baltimore City, and the second was in the nature of a plea of *lis pendens,* alleging that a proceeding was pending in Baltimore county, instituted by the plaintiff for the purpose of securing a divorce *a mensa,* in

which a counsel fee had been allowed and alimony *pendente lite*.

On the same day and at the same time as the filing of the pleas, the defendant filed in proper person an answer, which he claimed to be to the order *nisi* of the Court, and in which it is said that the defendant appears and answers for the purpose of filing the answer only.

The first question that arises is one of equity pleading as to the effect of the answer so filed. It has been the recognized law of this State for a long time that, "if a defendant answers to anything which he has pleaded he thereby overrules his plea, for his plea is only why he should not answer, so that if he answers he waives his plea to the same matter." *Hannah K. Chases Case,* 1 Bland, 206; *Frederick Co.* v. *Frederick City,* 88 Md. 662; *Morton* v. *Harrison,* 111 Md. 540; and the rule thus recognized is in strict accord with the generally recognized rule of equity pleading. *Story's Eq. Pleading,* sec. 688.

With this rule in mind, what does the answer cover? In the first paragraph it alleges the filing of the bill for divorce *a mensa* in Baltimore county and the order of the Court of that county directing the payment of alimony *pendente lite* and counsel fees; thus setting up by way of answer the same matter as that contained in the second of the pleas filed. In the second paragraph of the answer is contained a specific denial of the allegations of the third, fourth and fifth paragraphs of the bill of complaint. Not one of these paragraphs in any way related to the question of alimony, and there was nothing in the order *nisi* passed by the Court on the 15th of June which could, even inferentially, be construed as requiring the defendant at the time to make answer to these paragraphs. The third, fourth and fifth paragraphs all relate to the resources of the defendant or of the plaintiff, being thus germane to the order of June 15th, and also in answer to the allegation of the 6th paragraph of the plaintiff's bill; and by the sixth and last paragraph of the defendant's answer he refers to and relies upon his plea to the jurisdiction of the

Court, thus raising, inferentially, at least, by his answer, the question of jurisdiction. From the recital of the allegations of the bill and answer of the defendant, it will be apparent that unless it be upon the question of jurisdiction his answer has covered the matter alleged in the bill, even where in no way related to the order *nisi* of the Court, and therefore by this answer he must, with the reservation before named, be held to have waived his pleas.

Whether the recital in the sixth paragraph of the answer should properly be treated as a waiver of the pleas to the jurisdiction, need not now be determined, for the reason that by the pleas or answer, or both, the jurisdiction of the Circuit Court No. 2 to hear the matters in issue is distinctly raised, and the testimony upon the question having been taken and been embodied in the record may be properly now considered and disposed of.

Article 16, section 35 of the Code provides that "any person desiring a divorce shall file his or her bill in the Court either where the party plaintiff or defendant resides." The question of jurisdiction which is presented is, whether both or either of the parties had, at the time of the filing of the bill, such a residence in the City of Baltimore as the provision of the Code contemplates. The term residence is one which is used to signify different things. Sometimes it is to be construed as meaning the domicil of a party, and in others simply to indicate an abiding place for the time being without reference to domicil. The same term is to be found in the statute of this State relating to the right to be registered, and in all of those cases the construction has been uniform, giving to the term the legal significance of domicil. *Howard* v. *Skinner*, 87 Md. 556. No reason is apparent why a more lax construction should be given to the word as it is used in the statute with regard to divorce, in view of the long-settled policy of this State to discourage rather than to encourage such proceedings. Treating the word "residence" as used in section 35 as the equivalent of domicil, a consideration of the

facts as testified to is all that is necessary in order to reach a determination.

The parties to this suit resided in Baltimore county from 1880, and at Howard Park from 1908 to 1911. In February of 1911 the defendant left the home where he and his wife had been living and came to Baltimore City. After boarding for about a week at the Raleigh he rented a room on North Carey street. The plaintiff on the 8th May, 1911, left the house in which she had been living in Baltimore county, and rented and occupied with her children a dwelling on Thomas street in Baltimore City. In December, 1910, the plaintiff had filed her bill in Baltimore county for a divorce *a mensa,* alleging Baltimore county as the then residence of the parties, and after her removal to the city in May, 1911, on the 15th of June she filed the bill in this case for a divorce *a vinculo,* alleging that at that time both she and her husband were residents of this city. For a valid change of domicil there are two requisites, namely, an act and an intent. The actual removal of both Mr. and Mrs. Harrison from the county to the city would, as to each of them, constitute a sufficient act so as to give jurisdiction to the Circuit Court No. 2 of Baltimore City. The only question for consideration, therefore, is as to the intent of the parties. The evidence upon this point was that offered on behalf of the defendant, George Harrison, who took the stand himself and who also called his wife to the stand. She was, of course, an hostile witness, but as to matters lying peculiarly within her own knowledge he would be bound by her evidence upon all points where she was not successfully contradicted.

First, with regard to the domicil of George Harrison. He testifies in substance that it was never his intent to make Baltimore City his home; that as matter of fact he had always voted in Baltimore county, and intended to retain that as his place of residence. This evidence with regard to the exercise of the right of suffrage has been held in the Federal Courts to be conclusive upon the question of domicil, but in

the State courts a different view has obtained. *Hayes* v.
*Hayes,* 74 Ill. 312. The better rule seems to be, that while
it is an element and strong evidence as to intention, it is not
conclusive, and just as it is permitted to an individual to
testify as to his intent, that intent may nevertheless be more
satisfactorily shown by the acts of the individual, rather than
by his words. *R. R. Co.* v. *Carroll,* 84 Fed. Rep. 772. There
is no dispute that in the latter part of 1910 Mr. Harrison
was legally domiciled in Baltimore county, and therefore had
properly voted there, and it is also true that when he gave
his evidence on September 28th, 1911, there had been no
election in Baltimore City at which he could have voted after
the time when he left his home in Howard Park. Under
these circumstances the evidence as to voting amounts in
reality to no more than his oral declaration of his intent. A
domicil for the purposes of divorce is not a favorite of the
law—*Bell* v. *Bell,* 181 U. S. 175; *Streitwolf* v. *Streitwolf,*
181 U. S. 179; but it is equally true that a shifting place of
residence to avoid or occasion delay in the service of the
process of the Court has no greater claims to consideration,
and Mr. Harrison testified distinctly that he is simply resid-
ing in Baltimore City until this matter (the divorce case)
is over; that then he expects to go back to Baltimore county.
As compared with that, there appears in the evidence the
following letter written by him on the day when he left his
Howard Park home:

"January 26, 1911.

*Mrs. Mary A. Harrison:*

Dear Mme.—The early hour at which I am compelled to
arrive at my place of employment necessitates that I live in the
city. I shall be glad to provide a home for you and the children
there.

If you will consent to this, address me at the Calvert Building,
care of Z. Howard Isaac.

Sincerely,        GEORGE HARRISON."

The language of this letter is clearly at variance with, even
in flat contradiction of his testimony upon the stand, and

tends practically to neutralize his evidence; it is true that
under the guise of trying to explain the letter he seeks to
contradict its plain import, to say that the statement con-
tained in this letter did not assign the real reason for his
leaving his home, but that they were very different; but the
fact remains that his letter written when he left, and his
statements as a witness are in contradiction of each other.

The presumption of the law is that where a person actually
lives is his domicil, though this is a rebuttable presumption.
*Anderson* v. *Watt,* 138 U. S. 694. But it is also true that
Mr. Harrison having by his pleadings raised the question of
the jurisdiction of the Court by an allegation that he was a
resident of a different jurisdiction, the burden was upon
him to show the lack of jurisdiction of Circuit Court No. 2,
and his own evidence is very far from being satisfactory upon
that point. Nor is it in any way aided by the evidence of
the plaintiff, Mary A. Harrison, called by him as a witness,
which is silent as to the intent of her husband.

Mrs. Mary A. Harrison, the plaintiff, was called to the
stand by the defendant, evidently for the purpose of estab-
lishing by her that she was a resident of Baltimore county,
and therefore had no standing to maintain the suit upon the
foundation of her residence in the City of Baltimore. In
her case, as in her husband's, we have the sworn declaration
as to the intent, and if his declaration as to intent is to be
taken as controlling with regard to his domicil, there appears
no good reason why hers should not be, so far as her domicil
is concerned; the result of which would be that there would
be a jurisdiction in the Circuit Court No. 2 by reason of
the domicil of the plaintiff, rather than the domicil of the
defendant. A further examination of her evidence is more
satisfactory than the evidence given by her husband in his
own behalf; she testifies to having rented her house in Balti-
more county for a period of four months, but apparently
with a right to the lessee to occupy it after the expiration
of that time for such additional length of time as he might

desire, and with the apparent further intention in case it was at any time vacated by the first lessee, to continue to rent it as long as she might be able, and continue to make her residence during the time it was so rented, at least, in Baltimore City. For this determination she assigned as a reason, the purpose of educating one of her sons who was attending the Polytechnic, and that by residing in the city she would be able to send him there free of cost, as well as an additional reason that she expected or hoped to be able to sell the Howard Park property. There is nothing in her evidence of a contradictory character, such as appears in the evidence of her husband; the motive for the intent requisite to a change of domicil has every appearance of probability and truthfulness.

As a result of careful examination of the evidence, the fair conclusion seems to be that after the departure of Mr. Harrison from the home, Mrs. Harrison formed an intent such as the law requires to work a valid change of domicil. No certain or definite duration of residence is requisite under the law to accomplish the acquisition of a new domicil. What is required, and all that is required, is that there shall be a clear, definite intent and an act done in the execution of that intent. Mrs. Harrison by her change of residence had done the necessary act; her evidence as to her intent is uncontradicted, either by other witnesses or by any conduct upon her part inconsistent with the declared intent, and it was therefore competent for her to file and maintain the present bill.

The decree below will accordingly be reversed, and the cause remanded for trial.

> *Decree reversed and cause remanded, costs to be paid by the appellee.*