# CHARLES H. WHITING

*vs.*

## FLORENCE A. SHIPLEY, ADMINISTRATRIX.

*Administration: jurisdiction; domicile or residence; married*
*women; separation from husband.  Courts of*
*concurrent jurisdiction.*

In determining in what county application should be made
for letters of administration on an intestate's estate, the word
"residence," as used in section 14 of Article 93 of the Code,
means the fixed and permanent home or domicile of the de-
ceased, as distinguished from a place of temporary abode.

p. 117

Under section 14 of Article 93 of the Code, letters of admin-
istration upon the estate of an intestate can only be granted by
the Orphans' Court of the county in which he had his domicile
at the time of his death.                              p. 117

The general rule is that, in the absence of a decree of separa-
tion or divorce, the legal domicile of a wife follows that of her
husband.                                              p. 118

The mere fact of their living apart does not affect the ques-
tion, unless there is a judicial decree of divorce or of separation.

p. 118

It is the province of the Orphans' Court to determine the
question of *residence* of an intestate, and their decision can not
be reviewed in collateral proceedings.                p. 118

In general, when two courts have concurrent jurisdiction over
the same subject-matter, the court in which the suit is first
commenced is entitled to retain it, and the other co-ordinate
court has no authority to interfere, and should, as soon as judi-
cially informed of the pendency of the prior suit, dismiss the
subsequent proceedings.                               p. 119

But the party complaining against the jurisdiction exercised
by one such court, upon the ground that the jurisdiction of

another court had already been invoked, must adduce proof to
sustain the allegation.                                    p. 119

Where an application had been made, to the Orphans' Court
of one of the counties, for letters of administration on a de-
cedent's estate, and application for letters on the same estate
was made, on the same date, to the Orphans' Court of Balti-
more City, it was: *Held,* upon appeal, that the order of the
Orphans' Court of Baltimore City refusing to revoke letters
actually granted by it on such application, should not be re-
versed, merely because of the application made to the other
Court, especially when the decision of the Orphans' Court of
Baltimore City, as to the residence of the deceased was correct.
                                                          p. 119

*Decided December 1st, 1915.*

Appeal from the Orphans' Court of Baltimore City.

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe,
Burke, Thomas, Pattison, Urner, Stockbridge and Con-
stable, JJ.

*Reuben Garey* and *Archey C. New,* for the appellant.

*Robert H. Carr* and *Benjamin Kann,* for the appellee.

Thomas, J., delivered the opinion of the Court.

Mrs. Ida A. Whiting died in Baltimore City on the 21st
day of September, 1914, and on the 29th of the same month
Florence A. Shipley, of Baltimore County, her oldest daugh-
ter, filed in the Orphans' Court of Baltimore City an appli-
cation for letters of administration upon her estate. On the
same day the Court passed an order requiring Dr. Charles
H. Whiting, the husband of the deceased, to appear in said
Court on the 1st day of October, 1914, and show cause why
letters of administration should not be granted. The cita-
tion was returned "summoned," and the record shows that in
response to said order Dr. Whiting appeared before that
Court on the 1st of October, 1914, "by attorney and stated.
that letters of administration upon said estate had been

granted·in Carroll County." The Orphans' Court of Baltimore City thereupon issued another citation for Dr. Whiting requiring him to appear before that Court on the 5th of October, 1914, and to show cause why letters of administration should not be granted, etc., and in obedience to that summons he appeared before said Court on the day named and "refused to take letters of administration," and the Court granted letters of administration to Florence A. Shipley.

Thereafter, on the 27th of October, 1914, Dr. Whiting filed in the Orphans' Court of Baltimore City a petition, alleging that Mrs. Whiting died on or about the 25th of September, 1914, "leaving surviving her your petitioner, her lawfully wedded husband," Gladys Whiting, an infant daughter "by said marriage," and two daughters by a former marriage, namely, Florence A. Shipley and Blanche Mitten; that "on or about" the 29th of September, 1914, he applied to the Orphans' Court of Carroll County for letters of administration upon the estate of his said wife, "and that letters were refused him on the ground that he could not produce a certificate of his marriage"; that immediately thereafter he took steps to obtain a copy of his marriage certificate with the view of obtaining letters of administration from the Orphans' Court of Carroll County on the 6th of October, 1914; that on or about the 5th of October, 1914, Florence A. Shipley made application to the Orphans' Court of Baltimore City for letters of administration, and that he was summoned to appear before that Court; that in view of the pending proceedings in the Orphans' Court of Carroll County, and believing that it was improper and detrimental to the interest of the estate to ask for letters of administration in Baltimore City, and not knowing the consequences of his refusing the same, "he did refuse to take out letters of administration in this Court," and that letters were forthwith granted to Florence A. Shipley; that he applied to the Orphans' Court of Carroll County for letters because "the greater part of the estate of said decedent was situated in Carroll County," and because he could obtain a bond there

without expense or inconvenience to himself or to the estate, and that he had recently been advised that it was lawful and proper and for the best interests of the estate to obtain letters of administration in the Orphans' Court of Baltimore City. The petition then prayed that the letters previously granted to Florence A. Shipley be revoked, and that letters of administration be granted to him. That petition was answered by Florence A. Shipley, and on the 3rd of December, 1914, Dr. Whiting filed an amended petition, containing practically the same averments, in which the only relief asked was that the letters previously granted be revoked. Florence A. Shipley also answered the amended petition, and after a hearing, at which testimony was produced by the petitioner, the Orphans' Court of Baltimore City passed an order dismissing the amended petition, and from that order the petitioner has appealed.

It appears from the evidence produced at the hearing that Dr. Whiting, at the time of the death of his said wife, and for twenty-four years prior thereto, was a resident of Baltimore City. They had not lived together for six or seven years before her death. She left his home in Baltimore City and went to the home of her daughter, Florence A. Shipley, in Baltimore County. From there she went to her daughter's home in Philadelphia, and from there to the home of her brother-in-law, John T. Wagner, in Carroll County, Maryland, where she lived for two or three years. About six or seven months before her death she went to her nephew's, Howard Shipley's, in Carroll County, and was there for three or four months before she returned to Baltimore City, where she was living at the time of her death. The evidence also shows that Dr. Whiting applied to the Orphans' Court of Carroll County for letters of administration on the 29th of September, 1914, and that on that day the Orphans' Court of Carroll County issued a citation for Florence A. Shipley to appear, etc., on the 6th of October, 1914. The citation for Florence A. Shipley was never returned to the Orphans' Court of Carroll County, and, so far as the record discloses,

Md.]

no further action was taken upon the application of Dr. Whiting in that Court.

Counsel for the appellant claim that the evidence shows that Dr. Whiting applied to the Orphans' Court of Carroll County for letters of administration on the 28th of September, 1914, but the testimony of Mr. Arthur, the Register of Wills, the affidavit of Dr. Whiting to his petition for letters filed in that Court, and the original and amended petition in the Orphans' Court of Baltimore City clearly show that formal application to the Orphans' Court of Carroll County was not made until the 29th of September.

Section 14 of Article 93 of the Code provides that "whenever any person shall die intestate, leaving in this State personal estate, letters of administration may forthwith be granted by the Orphans' Court of the county wherein was the party's mansion house or residence; or in case he had no mansion or residence within the State, letters shall be granted in the county where the party died," etc.

The word "residence" in this section of the Code has been repeatedly construed to mean the fixed and permanent home or domicile of the deceased, as distinguished from a place of temporary abode, and letters of administration can only be properly granted by the Orphans' Court of the county in which he had his domicile at the time of his death. *Raborg* v. *Hammond,* 2 H. & G. 42; *Shultz* v. *Houck,* 29 Md. 24; *Harris* v. *Pue,* 39 Md. 535; *Ensor* v. *Graff,* 43 Md. 291; *Stanley* v. *Safe Deposit Co.,* 87 Md. 450; *Oberlander* v. *Emmel,* 104 Md. 259; *Cain* v. *Miller,* 117 Md. 45; *Sudler* v. *Sudler,* 121 Md. 46.

The general rule is that in the absence of a decree of separation or divorce the legal domicile of a wife follows that of her husband. In *Jacobs on Domicil,* sec. 209, the author says: "As a general rule, it has been universally held in all civilized countries, and in all ages, wherever the subject of domicil has been discussed, that, upon marriage, the domicil of the wife merges in that of the husband, and continues to follow it throughout all of its changes, so long

as the marriage relation subsists." In 14 *Cyc.* 846-7, we find the statement: "Following out the theory of an identity of person, the law fixes the domicile of the wife by that of the husband and denies to her during cohabitation the power of acquiring a domicile of her own separate and apart from him. * * * Regarding the rule just stated as absolute, it has been held not to be affected by the fact that the husband and wife are living apart in the absence of a judicial decree of separation or divorce." The rule as stated was applied by Judge Miller in *Ensor* v. *Graff, supra,* where, after referring to the evidence tending to show the residence of the husband, he said: "Upon these facts it is clear, we think, that the *residence* of Fowler and his wife, at the period of his death, was, for the purpose of granting letters of administration, in Baltimore City, and this residence, as to his widow, was not changed by her remaining in Baltimore County until her death, because she was in such condition of mind, as to be incapable of having or manifesting an intention to change her residence."

In other jurisdictions there are recognized exceptions to the rule referred to, which are held to apply to cases where the wife has been abandoned by the husband or she has been forced by brutal treatment to leave him and to establish a domicile for herself, and to divorce cases. 14 *Cyc.* 847; *Jacobs on Domicil,* secs. 223-227. But these exceptions have no application to the facts of this case, and we are not to be understood as giving them our approval. Here there is no evidence of brutal treatment or abandonment on the part of the husband.

The Orphans' Courts of this State, in exercising the jurisdiction conferred upon them by the above mentioned section and granting letters of administration, are necessarily authorized and required to determine the residence of the deceased at the time of his death, and their decisions cannot be reviewed in collateral proceedings. *Raborg* v. *Hammond, supra; Shultz* v. *Houck, supra; Stanley* v. *Safe Deposit Co., supra.* The appellant contends that the Orphans' Court of

Carroll County and the Orphans' Court of Baltimore City, upon application for letters of administration upon the estate of the deceased, had jurisdiction to determine the question of her residence at the time of her death, and that the jurisdiction first invoked was exclusive. He relies upon the well established rule, "that when two Courts have concurrent jurisdiction over the same subject matter, the Court in which the suit is first commenced is entitled to retain it, and the other co-ordinate Court has no authority to interfere, and will as soon as judicially informed of the pendency of the prior suit, dismiss the subsequent proceedings." *Brown* v. *Wallace,* 4 G. & J. 497; *Brooks* v. *Delaplaine,* 1 Md. Ch. 354; *Dunnock* v. *Dunnock,* 3 Md. Ch. 150; *Withers* v. *Denmead,* 22 Md. 145; *Albert* v. *Winn,* 7 Gill, 446; *Jenkins* v. *Sims,* 45 Md. 537; *B. & O. R. R. Co.* v. *Flaherty,* 87 Md. 123; *Wright* v. *Williams,* 93 Md. 70; *Preston* v. *Poe,* 116 Md. 1; *Gerke* v. *Colonial Trust Co.,* 117 Md. 579. But even if it be conceded that the rule applies to the jurisdiction exercised by the Orphans' Courts of this State under the section referred to, as to which we are not required to express an opinion in this case, it is quite clear it cannot avail the appellant in the case at bar. It was incumbent upon him to show that the jurisdiction of the Orphans' Court of Carroll County was the one first invoked, and all that the evidence shows is that formal applications for letters of administration were filed in the Orphans' Court of Carroll County and in the Orphans' Court of Baltimore City on the same day. Under such circumstances we clearly would not be justified in reversing the order of the Orphans' Court of Baltimore City refusing to revoke the letters previously granted for the reason urged, especially when it appears that that Court correctly decided the question of the residence of the deceased; and was therefore authorized by the Code to grant letters of administration upon her estate.

It follows from what we have said that the order appealed from must be affirmed.

*Order affirmed, with costs.*