# THOMAS F. PATTISON *vs.* HOWARD O. FIROR, EXECUTOR.

*Domicile of Decedent—Grant of Administration—Evidence— Right of Appeal.*

For a valid change of domicile, both an act and an intent are necessary.                                            p. 246

The presumption of law is that where a person actually lives is his domicile, but the presumption is rebuttable.       p. 246

Evidence that decedent sold the furniture in the farm house in which she had lived, thereafter renting the house to various tenants, that she took up her abode with her daughter and son-

in-law, with whom she lived for the balance of her life, most
of the time in Baltimore, keeping her personal belongings and
receiving her mail at the son-in-law's house, and that she spoke
of such house as her home, and that she described herself in her
last will as "of Baltimore," justified a finding that she was a
resident of Baltimore at the time of her death.        pp. 245-248

That decedent registered and voted in one year in the county
in which she had formerly resided, and kept money in bank at
a place near such former residence, did not affect the propriety
of the finding that she resided in Baltimore at the time of her
death, which did not occur until more than three years after
she voted in the county.

An appeal lies from an order of the orphans' court dismissing
a petition by one of the heirs at law of a decedent asking that
the court refuse to grant letters testamentary or of administra-
tion on the ground of decedent's non-residence.          p. 249

Any one interested in a decedent's estate has the right to in-
sist that the estate be administered, in accordance with statute,
in the county of decedent's residence.                  p. 249

*Decided June 21st, 1924.*

Appeal from the Orphans' Court of Baltimore City.

Petition by Thomas F. Pattison, to the Orphans' Court
of Baltimore City, asking that letters testamentary or of
administration be not granted by said court on the estate of
Maria F. Pattison, deceased, to which petition Howard O.
Firor, the executor named in said decedent's will, filed an
answer. From an order dismissing the petition, petitioner
appeals. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS,
OFFUTT, and BOND, JJ.

*W. Conwell Smith* and *Joseph L. Donovan,* for the appel-
lant.

*George E. Robinson,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This appeal is from an order of the Orphans' Court of Baltimore City dismissing a petition filed by the appellant in that court in which he asked that no letters testamentary or of administration on the estate of Maria F. Pattison be granted in that court for the reason that the decedent at the time of her death was a resident of Howard County, Maryland. The order appealed from was passed after testimony had been taken and after a hearing had been had on the issue of the decedent's residence, and the only question presented by the appeal is whether the lower court was justified by the evidence in the case in deciding that she was a resident of Baltimore City.

Many of the facts relating to that issue are uncontradicted, while the evidence as to others is vague and confused rather than contradictory.

The facts as shown by a fair valuation of the evidence are that Mrs. Pattison lived most of a long life with her husband on a farm at Guilford in Howard County, and that after his death, which occurred in 1915, she continued to live there for at least a year and a half and perhaps as long as three or four years. At some time between 1917 and 1920 she sold the furniture she had in the dwelling house on the farm and moved out of that house never to return. After that the house was rented to various tenants and at the time the decedent died was occupied by a colored family. On leaving the farm house Mrs. Pattison went for a time to visit her daughter, Mrs. Dixon, who lived in Baltimore, and she then went to another daughter, Mrs. Thompson, who lived in Towson, and stayed there for a while, and from there she returned for a time to Mrs. Dixon, and finally she went to the home of her son-in-law, Howard O. Firor, and she continued to live there with her daughter and her son-in-law, except for occasional visits, of varying duration, to her other children, until her death, and during that period except for one year prior to 1920 Mr. Firor resided in Baltimore. She had a room in Mrs. Firor's home, such personal belongings as she had she kept there, she received her mail there, she spoke

of it as her home to her daughter, Mrs. Thompson, and her granddaughter, Mrs. Munson, and in the paper offered as her last will and testament she described herself as "of Baltimore."

In 1920 she registered and voted at the election held in that year in Howard County. At the same time her son-in-law with whom she lived and her daughter also voted there. Firor at that time was also legally a resident of Howard County, and rented from Mrs. Pattison the farm on which she had lived. Later he had his registration transferred to Baltimore City, but Mrs. Pattison after voting in 1920 apparently took no further interest in elections of any kind, and neither voted nor took any steps to change her registration. Her interest in the election of 1920, it may be inferred from the testimony, was due to her admiration for Mr. James L. Hobbs, a candidate at that election for the office of Sheriff of Howard County.

Shortly after she first went to live with Mr. Firor he removed to Washington, D. C., in 1918 and she spent that autumn and the following winter with him there. When he left Washington he moved to a bungalow which he had built on the farm in Howard County in which she had a life estate, and she lived there in the summer of 1919, and in the fall of 1920 she went to live with him at his home 3508 Liberty Heights Avenue in Baltimore, and remained there except for visits during the summer months to her other children until her death. On these visits, one of which was to her son, the appellant in this case, she would stay for varying periods but only during the summer months.

This is in substance the testimony upon which the orphans' court acted in deciding that at the time of her death Mrs. Pattison was a resident of Baltimore City, and while the question may not be altogether free from doubt, nevertheless we feel that the evidence was sufficient to justify that conclusion.

As said in *Harrison* v. *Harrison,* 117 Md. 613: "For a valid change of domicil, there are two requisites, namely, an act and an intent," and "the presumption of the law is

that where a person actually lives is his domicil, though this
is a rebuttable presumption."

Section 14, article 93, C. P. G. L. of Md., provides:
"Whenever any person shall die intestate, leaving in this
State personal estate, letters of administration may forth-
with be granted by the orphans' court of the county wherein
was the party's mansion house or residence; or in case he
had no mansion or residence within the State, letters shall
be granted in the county where the party died; and in case
the party neither had mansion or residence nor died within
this State, letters may be granted in the county wherein
lies or is supposed to lie a considerable part of the party's
personal estate.    Nevertheless, whenever any person shall
die, leaving in this State property subject to administration,
the said letters of administration shall be granted in the
county wherein was the mansion house or residence of the
deceased; provided, he had such property lying in said
county," and in *Brafman* v. *Brafman,* 144 Md. 414, this
Court, in construing the word "residence" as used in that
section, speaking through Judge Pattison, said: "The
word 'residence' as here used means the fixed or permanent
home or domicile of the deceased, as distinguished from a
temporary abode.    *Whiting* v. *Shipley,* 127 Md. 117.   A
domicile, as said by the Supreme Court in *Mitchell* v. *United
States,* 21. Wallace, 138, 'is a residence at a particular place
accompanied with positive or presumptive proof of the in-
tention to remain there for an unlimited time'; and this
Court said, in *Thomas* v. *Warner,* 83 Md. 120, 'the idea of
residence is compounded of fact and intention; to effect a
change of it, there must be an actual removal to another
habitation, with an intention of remaining there.' "   And
the same rule somewhat differently phrased is thus stated in
*Tracy* v. *Tracy,* 62 N. J. Eq. 810:   " 'Residence' has been
defined to be the place where a person's habitation is fixed,
without any present intention of removing therefrom.   The
place where a person lives is *prima facie* taken to be his
residence, unless facts be established to the contrary.   3 *Am.
Law Reg.* (N. S.) 262; *Ennis* v. *Smith,* 14 How. 423; *Hos-*

*kins* v. *Matthews,* 8 DeGex, M. & G. p. 13. Residence does not depend upon the manner of living, which may be at housekeeping or lodging. *Inhabitants of Waterboro* v. *Inhabitants of Newfield,* 8 Grennl. 203; *Guier* v. *O'Daniel,* 1 Hare & W. Lead, Cas. 744. Residence is lost by leaving the place where one has acquired a permanent home, and removing to another place *animo non revertendi,* and is gained by remaining in such new place *animo manendi."*

Weighing the value of the testimony in connection with these principles, in our opinion it is sufficient to show that Mrs. Pattison at the time of her death was a resident of Baltimore City within the meaning of the section of the Code P. G. L. of Md. last referred to. There can be no reasonable doubt that she had given up her residence on the farm in Howard County, because she had rented it to her son-in-law, and had permitted the dwelling house on it to be occupied for several years by tenants, some of whom were white and some colored, and she sold the furniture in it. Those facts admit no inference other than that when she first left the farm to visit her daughter she had no intention of returning to live on it, and it is reasonably clear that she did intend to make her home in Baltimore City. She said to her daughter and to her grandduaghter that her home was in Baltimore; in the paper offered as her last will she described herself as "of Baltimore," the home of her son-in-law in Baltimore was the only domicile she had which possessed any quality of permanency during the last four or five years of her life, for while she left it from time to time for visits she always returned to it, and it was there that she kept such personal belongings as she possessed, and it was there that she received her mail.

While no one of these facts standing alone might be adequate, yet taken together they are sufficient to show a definite and certain intention of remaining in Baltimore City for an indefinite time, and of becoming a resident of that city. Nor do we think the fact that in 1920 she registered as a voter in Howard County, or that she kept some money in a bank in Laurel, should affect that conclusion. For if we

concede that she was a resident of Howard County in 1920, still the facts to which we have referred are sufficient, together with the further facts that she had not then nor subsequently any place of abode in that county, and that she did not vote at any succeeding election, to show that she intended to give up her residence there.

The motion to dismiss the appeal in this case must be overruled. It rests upon the proposition that the appellant was not injured by the order appealed from, and that therefore, under the decision in *Culver* v. *Cooke,* 133 Md. 686 etc., he had no right to appeal from it. But in our opinion the law is otherwise. Section 60, article 5, Code Public General Laws of Maryland, provides: "From all decrees, orders, decisions and judgments, made by the orphans' court, the party, who may deem himself aggrieved by such decree, order, decision or judgment, may appeal to the Court of appeals." The appellant was one of the heirs at law of the decedent who would, but for the will (which has not yet been admitted to probate), share in the distribution of her estate. The statute referred to in an earlier part of the opinion definitely fixes the place where administration of the estates of decedents may be had. Any one interested therein must certainly therefore have the right to insist that the estate be administered in accordance with the express and explicit mandate of the statute, and deprivation of a right so conferred carries with it an implication of injury without proof of special damage. And certainly if he is deprived of that right there must be some tribunal in which he can assert it, and the proper and natural place to raise the question would be in the court in which application is made for the grant of letters on the estate.

The appellant in this case had an interest in the estate. If his contention was correct he had been deprived of a statutory right, and the Orphans' Court of Baltimore City was empowered to determine the question upon which that supposed right depended, to wit, the residence of the decedent at the time of her death, and from its determination of that issue an appeal lay to this Court. For as was said in

disposing of an analogous question in *Stanley* v. *Safe Deposit Co.*, 87 Md. 454: "In determining whether the will should be admitted to probate at all the orphans' court was compelled itself to decide the question of the decedent's residence, as no such issue of fact, for trial by a jury, had then been proposed; and the court must have decided that such residence had been in Baltimore County, because in no other way could the court have adjudged that this will was entitled to be admitted to probate in that county. This decision may be right or it may be wrong on the facts that were in evidence before the court; but the question is, not whether the court rightly decided, but whether it had a right to decide what it did decide. If it had a right to decide the question of residence, then it had the right to determine whether it had jurisdiction to admit the will to probate, and if it decided that preliminary question erroneously its decision was subject to review on appeal or to reversal by the court itself upon proper application made to it for that purpose in due season. *Raborg* v. *Hammond*, 2 Har. & G. 48; *Schultz* v. *Houck*, 29 Md. 26."

Nor is there anything in the case of *Culver* v. *Cooke, supra,* which in any way conflicts with this conclusion, because the only thing decided in that case was that one whose appointment as guardian of certain infants had been revoked and annulled by an order from which no appeal had been taken was not injured by the cancellation of a guardianship bond filed in connection with the cancelled appointment, and for that reason had no right of appeal from the order cancelling the bond.

From what has been said it follows that the motion to dismiss the appeal will be overruled and the order appealed from affirmed.

> *Motion to dismiss appeal overruled, and order affirmed, with costs.*