LEE *v.* GREEN, ADMINISTRATRIX

[No. 180, October Term, 1949.]

464

*Decided June 7, 1949.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Samuel Abrams* for the appellant.

*William I. Gosnell,* with whom were *Nicholas & Gosnell* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Mary Lee, Appellant, from an order of the Orphans' Court of Baltimore City.

Vernon Green died May 28, 1949. His widow, Henryene P. Green, obtained letters of administration on his estate from the Orphans' Court of Davidson County, Tennessee, on June 4, 1949, and ancillary letters of administration from the Orphans' Court of Baltimore City on June 13, 1949. In Tennessee a widow of a childless decedent is entitled to his entire estate. In Maryland, such a widow, where the decedent is survived also by a father or mother, as in the instant case, is entitled to one-half of the estate. Code 1939, Article 93, Section 130. The mother of the decedent, Mary Lee, therefore filed a petition in the Orphans' Court of Baltimore City praying that the ancillary letters of administration, previously granted to Henryene P. Green, be revoked for the reason that Vernon Green had no domicile in Davidson County, Tennessee, and was not seized or possessed of any real or personal property there. From an order of December 17, 1949, finding that Vernon Green at the time of his death was domiciled in Nashville, Tennessee, and dismissing her petition, the appellant appeals.

The facts of the case for the purpose of this opinion follow. The decedent, Vernon Green, was born in Nashville, Tennessee. Previous to 1937 he had an interest in and managed a baseball team in Nashville, known as the Elite Giants. The team, being unsuccessful financially, was moved to various cities. The franchise was finally moved to Baltimore in 1937 and the name of the team became the Baltimore Elite Giants, a member of a Negro league. Vernon Green was the sole owner of that club after 1947. The decedent spent approximately six or seven months, from April to October during the baseball season, each year after 1937 in Baltimore. While in Baltimore he lived for some years in various apartments. Testimony was offered that he bought some furniture and often cooked for himself. In recent years, while in Baltimore, he lived with his wife at the York Hotel in one room where, except for his file and typewriter, the furniture was supplied by the hotel. This room was

also his office. He also kept his dog there. On his registration cards at the hotel he gave his address as 1409 Hawkins Street, Nashville, Tennessee. When not at that hotel he had his mail forwarded to 1409 Hawkins Street, Nashville, Tennessee. When he reserved his room at the hotel each baseball season the letters came from 1409 Hawkins Street, Nashville. When he left the hotel in October he took his file cabinet out of the hotel. While in Maryland he used Maryland license tags on his automobile and Tennessee tags when in that State. He paid no Maryland income tax. He filed his Federal income tax return as a resident of Tennessee. One witness testified that the decedent was negotiating for a new ball park to be built in Baltimore which required the signing of a ten year lease and he wanted to purchase a house as his private residence. Another witness testified that the decedent said "he had to make his home here (Baltimore) on account of the ball club". Another witness testified that the decedent told him he intended to make Baltimore his home.

When he left Baltimore at the end of each baseball season, he returned to Nashville where he remained during the winter except for occasional business trips to California and other places. He had no business interests in Nashville. While there he lived with his wife, his sister-in-law and mother-in-law at 1409 Hawkins Street. He was a registered voter in Nashville and one witness testified that decedent told him that he voted in Nashville. He owned a small piece of property in Nashville from which he received $8 a month as rent. He also owned a remainder interest in another small property in Nashville. There was no evidence that he was ever a registered voter in Maryland. The business manager of the club testified: "He (Green) also told me that he voted there, and that Nashville was his home". According to the testimony of a Tennessee attorney, registration requirements there are residence in the ward for six months. Decedent died in Baltimore and was buried in Tennessee.

The appellant's attorney in the Orphans' Court contended: "If we can prove through this witness, or others, that he changed his domicile, gave up his domicile and adopted Baltimore as his domicile, then Baltimore was his domicile, Maryland was his domicile." The question before this Court is whether the appellant has proven that the deceased abandoned his domicile in the State of Tennessee.

In *Maloney v. Maloney,* 1924, 22 N. Y. S. 2d 334, the wife sought a divorce from her second husband who contended she was never legally divorced from her first husband. She was an actress with a touring troupe and the first marriage occurred in Harrisburg, Pennsylvania. The couple lived in New York City thereafter until the wife went on tour and, while appearing in Philadelphia, filed suit for divorce in Lancaster County, Pennsylvania, which was granted. Her second husband defended this suit by claiming Pennsylvania was without jurisdiction to grant the first divorce because she was never domiciled there. The court upheld that contention saying, 22 N. Y. S. 2d at page 342: "Upon the testimony as a whole the plaintiff has failed to satisfy me by a fair preponderance of the credible evidence that she was domiciled in the State of Pennsylvania at the time she instituted the action and procured her divorce. It is probably true that she resided in Philadelphia from 1911 to 1913 and considered this City her temporary abode, but not her domicile, because there is no evidence of an intention to make that City her permanent home. She was there for the purposes of business only and her profession was one that required her presence at that time in the City of Philadelphia."

While the fact that a person registers and votes in a particular place is not in itself conclusive evidence of residence there, it is at least strongly persuasive. It, of course, may be overbalanced by other circumstances. *Wagner v. Scurlock,* 166 Md. 284, 292, 170 A. 539; *Harrison v. Harrison,* 117 Md. 607, 614, 84 A. 57; *Rasin v.*

*Leaverton,* 181 Md. 91, 94, 28 A. 2d 612, 143 A. L. R. 1021; Maryland Law Review, Volume IV, Page 102.

It was said by Judge Delaplaine in the case of *Shenton v. Abbott,* 178 Md. 526, at page 530, 15 A. 2d 906, at page 908: "The word 'residence' in the testamentary statute denotes more than a place of abode; we interpret it to mean the domicile of the deceased. *Whiting v. Shipley,* 127 Md. 113, 96 A. 285; *Pattison v. Firor,* 146 Md. 243, 126 A. 109. A person's domicile is the place with which he has a settled connection for legal purposes, either because his home is there or because that place is assigned to him by the law. It is well defined as that place where a man has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning. While a person may have several residences, he can have only one domicile at a time." See also Maryland Law Review, Volume VII, Page 38. In the case at bar it seems clear that the home of the decedent and his wife was Nashville, Tennessee. There is no substantial evidence that he had any intention of removing therefrom. It was certainly the place to which he returned each year when his business allowed him to do so. It was further said in that case in 178 Md. at page 530, 15 A. 2d at page 908: "It is a fundamental rule that, in order to effect a change of domicile, there must be an actual removal to another habitation, coupled with an intention of remaining there permanently or at least for an unlimited time. * * * No temporary residence, whether for the purposes of business, health or pleasure, occasions a change of domicile. Even though a person may be absent from his domicile for many years, and may return only at long intervals, nevertheless he retains his domicile if he does not acquire a domicile elsewhere. *Wagner v. Scurlock,* 166 Md. 284, 170 A. 539, * * *." In the case now before this Court there has been no actual removal to another habitation. The York Hotel in Baltimore could hardly be classified as a place where the decedent removed with an intention

of remaining there permanently or at least for an un-limited time. The York Hotel was a mere temporary residence for the purposes of business. Even though decedent was absent from Nashville during the baseball season for business reasons, he returned there regularly as soon as his business permitted him to do so.

It was further said in *Shenton v. Abbott, supra,* 178 Md. at page 531, 15 A. 2d at page 908: "In an opinion in the United States Supreme Court Justice Holmes declared: 'The essential fact that raises a change of abode to a change of domicile is the absence of any in-tention to live elsewhere. * * * The very meaning of domicile is the technically pre-eminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined.' *Williamson v. Osenton,* 232 U. S. 619, 34 S. Ct. 442, 443, 58 L. Ed. 758." In the case at bar the headquarters which the decedent had in order to register, vote, and file his income tax return was Nash-ville, Tennessee.

"No certain or definite duration of residence is requisite under the law to accomplish the acquisition of a new domicile. *What is required, and all that is required, is 'that there shall be a clear, definite intent and an act done in the execution of that intent."* Emphasis sup-plied. *Harrison v. Harrison, supra,* 117 Md. 607, at page 616, 84 A. 57, 60; 106 A. L. R. 11 note; *Pattison v. Firor,* 146 Md. 243, 246, 126 A. 109. In the case now before this Court we fail to find a clear, definite intent of the de-cedent, and an act done in the execution of that intent by the decedent, to change his domicile from Nashville, Tennessee. The order will therefore be affirmed.

*Order affirmed, with costs.*