EARLE T. FIDDLER, Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY, Defendant and Appellant.

Nos. 72, 102. Decided May 3, 1962.

*Hiram R. Cancio*, Secretary of Justice, *Arturo Estrella* and *Luis F. Candal*, Assistant Secretaries of Justice, for appellant. *Brown, Newsom & Córdova* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

Taxpayer Earle T. Fiddler filed a complaint in the San Juan Part of the Superior Court against the Secretary of the Treasury alleging, briefly, that during 1947, 1948, 1949, 1951, and 1953 he was a citizen of the United States of America and of the State of Connecticut, with domicile and residence in that state, and that he also maintained a residence in the city of San Juan, Puerto Rico; that during those five years he received gross income from sources within Puerto Rico, and that he declared and paid certain taxes on his income from sources within Puerto Rico; that he also received gross income in the state of his domicile in the United States of America, which he specifies; that as a citizen of the United States domiciled and resident in Connecticut he filed every year his returns on the income received in the United States, and paid to the Collector of Internal Revenue of Hartford, Connecticut, the corresponding federal taxes; that on December 3, 1954, the defendant notified him income-tax deficiencies for the said five years because he failed to include in those returns the gross income derived from sources within the United States; that the defendant had included in the gross income for 1948 an item of $8,150.18 which did not represent any gain nor capital realized in that year; that the defendant lacked jurisdiction to assess such defi-

ciencies, with the exception of the item of $8,150.18, because he is a citizen of the United States and of the State of Connecticut, with domicile and residence in that state, and that none of the income in question is derived from sources within Puerto Rico. After alleging further that after holding the corresponding administrative hearing the defendant notified his final determination on April 13, 1956 and that the deficiencies totalled $30,875.29, he prayed the court to decree: that the Secretary of the Treasury lacked jurisdiction to assess and collect those deficiencies, with the exception of the item of $8,150.18; that he was not bound to pay those deficiencies nor the item of $8,150.18, and that the imposition of 5 per cent was not proper in any case.

The defendant Secretary answered denying that the plaintiff was domiciled in and a resident of Connecticut, alleging, on the contrary, that he was domiciled in and was a resident of Puerto Rico. He admitted that during those five years the plaintiff received income from sources within Puerto Rico, and that he declared and paid in Puerto Rico the taxes on the local income in the sum of $44,049.17, and that the local income included the product of pineapple sales during 1947, 1948, 1949, and 1951, in the amounts specified in the complaint, and that those amounts included the local sales "as well as the part of the product of the pineapple sales in the United States corresponding to the market price of pineapples in Puerto Rico, computed in accordance with the provisions of § 15 (a) of the Income Tax Act of Puerto Rico in force at that time." The defendant denied that he was without jurisdiction over the plaintiff and that the items specified in the deficiencies were excluded by law. He alleged that the item of $8,150.18 constituted taxable income for 1948, and, lastly, he prayed for dismissal of the complaint.

The case went to trial, the parties having agreed that the three essential points on which the deficiencies were based were: (1) whether during the tax years in question the plain-

tiff was a citizen of the United States and of the State of Connecticut, domiciled and resident in that state; (2) whether the taxpayer was entitled under § 15 (*a*) of the Act to deduct from the income realized in the pineapple sales in the United States the income corresponding to the United States and which were not creditable to the selling price of pineapples in the Puerto Rican market; and (3) whether the item of $8,150.18 constituted taxable income.

The evidence offered consisted only of the plaintiff's oral testimony. The defendant did not offer any evidence.

The trial court rendered judgment sustaining the complaint as respects the years 1947, 1949, 1951, and 1953; ordering the cancellation of the tax deficiencies for those years; holding that the income item of $8,150.18 for 1948 was taxable, and setting aside the 5 per cent penalty.

From that judgment the Secretary of the Treasury took the present appeal for partial review. He assigns the commission of the following errors:

"First: The trial court committed manifest error of law in holding, in open violation of the applicable income tax law and regulations, that despite the fact that the appellee is a resident of Puerto Rico, he is not bound by law to pay taxes to the Insular Government on income derived from sales transacted in the United States of America;

"Second: The trial court committed error of fact and of law in holding that the appellee never acquired domicile in Puerto Rico, notwithstanding the fact that the evidence showed that he came to Puerto Rico in 1932 for the purpose of remaining here indefinitely and practice his profession, which he has done uninterruptedly;

"Third: The trial court committed error of fact and of law in setting aside the 5 per cent deficiency penalty imposed by the appellant as a result of the appellee's intentional disregard of the applicable law and regulations by failing to declare the income derived from sources within the United States of America."

# I

It seems convenient to discuss in the first place the second error. The defendant-appellant's contention that the plaintiff-appellee had his domicile or had acquired it in Puerto Rico during the years in controversy is untenable. The plaintiff-appellee's status has been repeatedly discussed before the courts in the years subsequent to 1932, in which according to the Secretary of the Treasury, Mr. Fiddler acquired domicile in this jurisdiction.

In the first case, *Fiddler v. Tax Court*, 65 P.R.R. 189, 198, this Court said:

"The petitioner herein [Fiddler] is a natural person, and a citizen and *resident of the State of Connecticut.*"

In *Buscaglia v. Fiddler*, 157 F.2d 579, the Circuit Court of Boston said:

"... We might go even further and conclude from the pleadings read in the light of matters within our knowledge that the meanings of the words have been interchanged and that in actual fact the taxpayer, although 'domiciled' in Stamford, Connecticut, has been a 'resident' of Puerto Rico since 1934."

The terms "domicile" and "residence" are very difficult to define.[1] A natural person may have several "residences"—*Lee v. Green*, 73 A.2d 889; *State ex rel. Richmond v. Bray*, 118 A.2d 323; *Commercial Bank of Crawford v. Pharr*, 43 S.E.2d 439; *England v. United States*, 137 F. Supp. 757; *Penn. Mut. Life Ins. Co. v. Fields*, 81 F. Supp. 54; *Downs v. C.I.R.*, 166 F.2d 504, *cert. denied*, 334 U.S. 832; *Hoofnel v. C.I.R.*, 334 U.S. 833; *Myers v. C.I.R.*, 180 F.2d 969—but only one domicile. Political Code of 1902, § 11, 1 L.P.R.A. § 8(2); *Sivalls v. United States*, 205 F.2d 444; *Clark v. Clark*, 225 P.2d 486; *State ex rel. Flaugher v. Rogers*, 77 N.E.2d 594; *In re Britton's Will*, 100 N.Y.S.2d 969.

---

[1] For the numerous definitions of the term "domicile," see the work by KENNAN, A Treatise on Residence and Domicile 1-61.

These terms have been confused frequently and have been used as synonyms.[2]

██ In his work Law of Federal Income Taxation, Vol. 3, p. 75, § 19.31, MERTENS distinguishes the terms "domicile" and "residence" as follows:

"... Any temporary place of abode may be a *residence,* but a *domicile* is a place of abode fixed and permanent or, at least, of indefinite duration. Time alone does not mark the distinction, for a temporary *residence* may extend over months or even years, while a *domicile* may be established by the first moment of occupancy. The question of *domicile* is a mixed question of law and fact; the question being largely one of intention to remain for an indefinite time." (Italics ours.)

██ The Puerto Rican law requires something more than the intention to change the domicile. The Political Code provides in its § 11, 1 L.P.R.A. § 8(7), that:

"Domicile can be changed only by the union of act and intent."

██ The taxpayer's intention as respects his domicile may be determined from his actions, declarations, conduct, and persistent intention to return to his established domicile. MERTENS, Law of Federal Income Taxation, *supra* at pp. 76–77. The taxpayer's intention with respect to his domicile may also be determined from his actions, such as: place where he votes and exercises his political rights, place where he pays taxes, place where his business offices and situs are established, place where he has social and fraternal connections, etc.[3]

In the case at bar the trial judge determined as a question of fact and of law that the plaintiff-appellee's domicile was

---

[2] This is the case of the Income Tax Act and its Regulations. *Buscaglia, Treas.* v. *Tax Court,* 68 P.R.R. 34; *Buscaglia, Treas.* v. *Tax Court,* 69 P.R.R. 844; *Bonet Berga* v. *Treasurer,* 6 T.C.D. 342; 3 MERTENS, Law of Federal Income Taxation 74, § 19.31; *Sureda* v. *Sureda,* 22 P.R.R. 620, 622.

[3] KENNAN, Residence and Domicile 211–22.

in the State of Connecticut. This determination of fact and of law is fully supported by the evidence. During the years in controversy the plaintiff-appellee made a total of 25 trips to the United States, or an average of almost five trips a year. His wife and children as well as his real property were in the State of Connecticut. In that state he maintained his home open all the year round; he resided therein with his family, servants, etc. The plaintiff-appellee was a member of social clubs in Connecticut (Tr. Ev. 28) ; he voted there (Tr. Ev. 19, 82, 83) ; took part in local politics (Tr. Ev. 37–38) ; his savings were deposited there (Tr. Ev. 8) ; paid taxes (Tr. Ev. 42–43) ; was a church member (Tr. Ev. 36) ; spent Christmas (Tr. Ev. 31, 32, 33) .

 During those years the plaintiff-appellee was not "actually present" in Puerto Rico for a period of one year or more. (Exhibits I and II.) Furthermore, the plaintiff-appellee can not be considered as domiciled in Puerto Rico because he did not meet certain legal requirements. The Organic Act of 1917 provided in its § 5(a)[4] that:

"That all citizens of the United States who have resided or who shall hereafter reside in the island *for one year* shall be citizens of Puerto Rico."

According to the holding of this Court in *Buscaglia, Treasurer* v. *Tax Court*, 68 P.R.R. 322, citizenship of Puerto Rico is predicated on domicile in Puerto Rico. *However, in order that this domicile may exist residence in Puerto Rico is required for a period of not less than one year.*[5]

█ Section 5(a) has not undergone any change by the adoption of the Federal Relations Act. Not having been actually present in Puerto Rico during the years in controversy, with the intention of maintaining his domicile here, the plaintiff-appellee can not be considered as domiciled in Puerto Rico.

---

[4] Added on March 4, 1927.

[5] *Quintero* v. *Treasurer*, 6 T.C.D. 335, 338. The residence required by Amendment XIV is also in the concept of domicile. 53 Harv. L. Rev. 68.

## II

In the discussion of the first error the appellant maintains that during the years in controversy Fiddler maintained a residence in Puerto Rico and practised his law profession, thereby becoming a resident of Puerto Rico according to the definition of "resident" contained in art. 183 of Income Tax Regulations No. 1 of August 6, 1925. The Secretary of the Treasury alleges that since Fiddler is a resident of Puerto Rico, he is bound to pay tax on the income derived from sources abroad, as provided by art. 69 of Income Tax Regulations No. 1 *supra*, which supplements § 15 of the Income Tax Act of 1924, 13 L.P.R.A. § 694.

■ We should not accept the contention of the Secretary of the Treasury that the plaintiff-appellee was, during the years in controversy, a resident of Puerto Rico within the meaning of the Income Tax Act of 1924, and the trial court erred in holding that the appellee was a resident for the purposes of art. 183 of Income Tax Regulations No. 1. Neither the Income Tax Act of 1924 nor its complementary Regulations defines the concept "residence."

In *Bonet Berga* v. *Treasurer*, 6 T.C.D. 342, the former Tax Court analyzed and construed arts. 183, 185, and 186 of the Regulations as follows:

■ "Article 183 of the Regulations defines a 'nonresident individual not a citizen' as an individual: (*a*) whose residence is not in Puerto Rico; (b) who is not a citizen of Puerto Rico. It further provides that an individual 'actually present,' in Puerto Rico, who is not a mere transient or sojourner, is a resident for purposes of the income tax... This article of the Regulations does not help us much because in the definition it employs the term to be defined, and then sets standards as respects the individual *actually present in this country.*

"Article 185 of the same Regulations provides that an alien, by reason of his alienage, 'is presumed' to be a nonresident. However, this controvertible presumption is overcome, among other things, according to that article, by the alien's acts

and statements of his intention to acquire residence in Puerto Rico, or showing that his stay in Puerto Rico had been of such an extended nature as to constitute him a resident.

"The next art. 186 provides that an alien who has acquired 'residence' in Puerto Rico retains his status as a resident until he abandons the same and actually departs from Puerto Rico. It further provides that the intention to change his residence does not change his status as a resident alien to that of a nonresident individual not a citizen of Puerto Rico.

"Construing jointly arts. 183, 185, and 186 of the Regulations, and in the absence of a definition, it must be concluded that the 'residence' contemplated by the Income Tax Act is of a juridical nature, similar to the domicile, and not one in the material concept of mere physical presence."

 This Court had already held that under § 2(a) (7) of the Income Tax Act as well as under §§ 5 and 5(a) of the Organic Act of 1917, the "residence" which makes a person a citizen of Puerto Rico is equivalent to domicile. *Buscaglia, Treas.* v. *Tax Court*, 68 P.R.R. 322, and *Buscaglia, Treas.* v. *Tax Court*, 69 P.R.R. 844. The plaintiff-appellee can not be regarded as a "resident" for the purposes of the Income Tax Act or of art. 183 of the Regulations, since in those years he did not acquire domicile in Puerto Rico. However, for the purposes of the Income Tax Act, a taxpayer may "reside" in Puerto Rico, even though he is domiciled in another place. *Buscaglia* v. *Fiddler*, 157 F.2d 579; *Buscaglia, Treas.* v. *Tax Court*, 68 P.R.R. 322.

 A person who has actually been present in Puerto Rico for a period of not less than one year without the intention of remaining indefinitely in this Island may be considered a resident of Puerto Rico; that is, (a) actually present for one year or more, and (b) *animus revertendi. Cf.* *González* v. *Secretary of the Treasury*, 76 P.R.R. 128, 133 *et. seq.*

 If a natural person should reside in Puerto Rico for a period of not less than one year with the intention of remaining indefinitely in this Island, he would acquire domi-

cile in Puerto Rico and would be a citizen of Puerto Rico, that is, (a) actually present for one year or more; (b) *animus manendi.*

These definitions are consonant with the provisions of the Organic Act of 1917, § 5(a), and of the Federal Relations Act, § 5(a), respectively,[6] on Puerto Rican citizenship.

The Secretary of the Treasury's criterion rests on a false premise, to wit: that the terms "residence" and "domicile" are the same thing. This has led him to cite, in support of his contention that the United States Supreme Court has upheld the power of the states to impose taxes on the income of its "residents" derived from sources without the state, the cases of *New York ex rel. Cohn* v. *Graves,* 300 U.S. 308; *Lawrence* v. *State Tax Commissioner,* 286 U.S. 276; *Guaranty Trust Co.* v. *Virginia,* 305 U.S. 19; *Virginia* v. *Imperial Coal Co.,* 293 U.S. 15; *Maguire* v. *Trefry, Tax Comm. of Mass.,* 253 U.S. 12. These cases are not applicable to the case at bar. In all of these cases the natural person or corporation taxed is domiciled in the state. The confusion becomes more evident upon appellant including the following citation in his brief: HELLERSTEIN, State and Local Taxation 632–33 (Prentice Hall, Inc., 1952):

"The definition of *resident* includes 'domicile' in all states, except for California, Delaware, and New York, which exclude from resident persons domiciled in the state provided they meet other qualifications. See *Ryan* v. *Chapman, supra,* p. 630, for the New York definition, which Delaware also employs. A few states seek to tax as residents persons temporarily abiding in the state on all income derived from whatever source; this result appears questionable as to income derived from sources outside the state. A number of states with a much more solid constitutional and economic justification for their action, tax the entire income of persons who maintain a permanent place of abode in the state for a prescribed period, even though not domiciled in the state." (Italics ours.)

---

[6] See KENNAN, Residence and Domicile 31, § 13.

■ This citation would be more in accord with the theory that the state may tax the income of persons who reside in the state "for a prescribed period"; in other words, in the case of Puerto Rico, the persons who acquire domicile ("residence," according to the Income Tax Act and its Regulations) after being actually present in the Island for a period of not less than one year.

As clearly stated by the author of the work cited:

"... A few states seek to tax as residents persons temporarily abiding in the state on all income derived from whatever source; this result appears questionable as to income derived from sources outside the state."

To uphold the theory that a person who comes to sojourn in Puerto Rico for a more or less long period is bound to pay income tax even when the income is derived from sources within the United States, might eventually create problems of a constitutional nature.

## III

We believe that the third error assigned relative to the 5 per cent penalty imposed by the appellant officer was not committed either. In this connection, the trial court stated as follows:

"In our opinion, the tax deficiency incurred by the plaintiff in the case at bar is not attributable to 'negligence or intentional disregard of rules and regulations' on his part, or to his intention to disregard such rules and regulations. The imposition of the 5 per cent penalty is not in order."

The appellant's only argument in support of his third assignment of error is that "this is a return of a lawyer with more than 40 years' experience in the profession, a tax expert who has failed to report income in violation of the clear letter of the applicable regulations and the law." Neither the statute nor its regulations provide that whenever the tax-

payer is an expert in tax matters, his refusal to pay the tax constitutes, by that circumstance alone, negligence or intentional disregard thereof.

In matter of penalties for failure to pay taxes, each case must be decided on its own merits taking into consideration its peculiar circumstances. Precisely with respect to persons who are cognizant of the complex tax laws, who have specialized in their study, analysis, interpretation, and application, it is more likely that there will arise genuine discrepancies respecting income concepts than with respect to those who have no knowledge of those matters. No one should be penalized because he is an expert.

We agree with the trial court that the taxpayer's conduct in this case did not constitute negligence or intentional disregard, which is the basis or assumption of the authority to impose the penalty.

The judgment appealed from will be affirmed.