MILLER *v.* MILLER

[No. 485, September Term, 1966 and No. 80,

September Term, 1967 (Adv.).]

*Decided July 3, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, OPPENHEIMER, BARNES, McWILLIAMS and FINAN, JJ.

*H. Emslie Parks* with whom was *Z. Townsend Parks, Jr.,* on the brief, for appellant.

*Robert C. Heeney* with whom were *Heeney, McAuliffe & McAuliffe* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

These appeals, concerning the claimed right of a father re-siding in Maryland to have a son and daughter domiciled in Florida visit and communicate with him, stem from the failure of the chancellor (Shearin, J.) to give full faith and credit to a Florida decree awarding custody to the mother, retaining jurisdiction over the children and denying the father all *present* visitation privileges.

Stated chronologically, the events leading to the passage of the orders appealed from are:

The father (James R. Miller) and the mother (Betty G. Miller) were married on February 14, 1954, and both of them resided in Maryland until June 16, 1965.

The parties mutually separated on August 8, 1961, entered into a written separation agreement dated January 8, 1962 and voluntarily lived separate and apart until December 22, 1962 when they resumed cohabitation, but separated again on May 8, 1965.

The wife moved with the children to Florida and, on June 21, 1965, filed a sworn manifestation of domicile with the clerk of the Circuit Court of Volusia County declaring that she resided and maintained a place of abode in DeLand. She and the children have since continuously resided there.

The husband, on September 17, 1965, claiming desertion by tacking the periods of separation, filed a bill in Montgomery County for an absolute divorce and custody of the children. Constructive notice to the wife was given by publication as in non-resident cases.

The wife, on October 27, 1965, alleging that the children had resided with her in Florida since June 17, 1965 and charging the husband with excessive drinking, cruelty of treatment and abuse of marital privileges, instituted a suit in Volusia County for custody of the children. Thereupon the Florida court awarded temporary custody to the mother and enjoined the father from removing the children from the state. A certified copy of the order of court was personally served on the husband in Maryland and constructive notice of the suit was given by mail and publication.

On November 22, 1965, the wife filed a motion (along with copies of the Florida domicile manifesto and custody order) to dismiss the Maryland proceeding for lack of jurisdiction over her and the children for the reason that she and they were bona fide residents of Florida. When the chancellor denied the motion to dismiss and the petition for a rehearing thereof, the wife appealed to this Court.[1] Notwithstanding the appeal, the chancellor entered a decree *pro confesso* against the wife, but this was stricken by consent and the wife was granted fifteen days from May 18, 1966 to file a responsive pleading.

In the intervening six months period (from November 1965 to May 1966) the Florida court heard the custody proceeding,

---

1. See No. 501, September Term, 1965.

took jurisdiction over the suit of the wife for divorce and granted her an absolute divorce on March 29, 1966 from her husband on the grounds of cruelty, habitual intemperance associated with brutalizing and degrading conduct and repeated commissions of adultery.

Promptly after the Florida decree became final, the wife informed this Court that the questions raised in the first appeal had become moot and requested that it be dismissed. It was so ordered on May 20, 1966.

On June 2, 1966, the wife, answering the husband's suit in Maryland, admitted the marriage and birth of the children, denied the desertion, alleged the adulterous conduct of the husband and informed the court of the Florida decrees awarding her custody of the children and granting her an absolute divorce from her husband.

On June 7, 1966, the husband filed a petition for visitation rights *pendente lite*. The wife answered the petition and moved for summary judgment on the ground that the Florida decree, which had fully and finally adjudicated the matters set forth in the bill of complaint, was entitled to full faith and credit. Argument on the motion was heard on July 20, 1966.

The chancellor filed an opinion and order on September 28, 1966. Although apparently recognizing that the divorce decree was entitled to full faith and credit, he was of the opinion, since he had *"in personam* jurisdiction" over the mother, that he was not required to give full faith and credit to the custody decree because other than *mere presence* the evidence was insufficient to enable him to make a determination as to whether or not the mother had acquired a bona fide permanent domicile in Florida. On the premise that the last certain domicile of the mother and children was Maryland and that a change of domicile could not be presumed by absence from one state and presence in another, the chancellor held that the children were still domiciled in Maryland and that the father had a right to visit, receive visits and communicate with them. He concluded the opinion by saying that since the mother rested her case wholly on his lack of jurisdiction, the matter of custody must be decided against her. The order, in addition to specifying periodic visits

of varying lengths, provided that the father should pay the transportation costs and telephonic charges.

The mother entered an appeal [No. 485/66] from the order allowing the father visitation rights and when the chancellor, instead of granting the motion of the mother for a stay of the visitation order pending the appeal, found her in contempt (*in absentia*) for not affording the father the opportunity to communicate with the children, the mother entered another appeal [No. 80/67] from the contempt order. The father, on the ground that the order allowing visitation rights was a *pendente lite* order and not a final one moved to dismiss the appeal.

The principal contention on appeal is that because the lower court was required to give full faith and credit to the Florida custody decree, it had no jurisdiction to enter an order affecting the children or adjudging her in contempt.

The motion to dismiss will be denied. We think the visitation order was appealable for, while it may have the appearance of an interlocutory order, it is final in that it modified the Florida custody decree. Nor did the fact that the mother had been adjudged in contempt bar her from taking an appeal and litigating her substantial rights in connection with which the contempt was committed. *Rethorst v. Rethorst,* 214 Md. 1, 133 A. 2d 101 (1957).

As to the merits, the conclusion of the lower court that it had jurisdiction over the children because it had jurisdiction over the parents was erroneous and must be reversed. Rather, since the children were neither present nor domiciled in Maryland, it is clear that the court was without jurisdiction to either pass an order concerning the right of the father to visit and communicate with the children or to find the mother in contempt for failing to comply therewith.

In *Zouck v. Zouck,* 204 Md. 285, 104 A. 2d 573 (1954) and *Naylor v. Naylor,* 217 Md. 615, 143 A. 2d 604 (1958), we recognized the "domicile" rule set forth in the Restatement, *Conflict of Laws,* § 117, to the effect that a state court has jurisdiction to determine custody of a child only if the domicile of the child is within the state. See also *Berlin v. Berlin,* 239 Md. 52, 210 A. 2d 380 (1965). As was pointed out in *Zouck,* at p. 302:

"'The term jurisdiction imports not only power over the parties to the action but the right to adjudicate as to the subject matter in a given case. *In matters of custody, jurisdiction of the person who seeks custody is not enough. There must be jurisdiction over the one of whom custody is sought for the court to have jurisdiction of the subject matter.*" [Italics ours.]

This is so because as was said in *Nelson on Divorce,* 2nd ed., § 15.32, at p. 287—

"A proceeding to determine custody of a minor child partakes of the nature of an action in rem, the res, or the subject matter, being the child's status or his legal relationship to another. *If the court does not have jurisdiction of the children it does not have jurisdiction of the subject matter* to determine the right to custody as between the parties *even though it does have jurisdiction of the parties, who are the parents of the children.*" [Italics ours.]

Also see Nelson, *op.cit.,* § 33.62; Beale, *Conflict of Laws,* Vol. 2, § 144.13.

The law, therefore, is settled that absent jurisdiction over children, a court has neither the power nor a right to judicially determine questions concerning custody and visitation rights. And, for the same reason in this instance, the rule would apply to a contempt proceeding arising out of failure to comply with an order in either of the other respects.

Whether or not the Maryland court was required to give full faith and credit to the Florida custody decree necessarily depends on whether the children were domiciled in that state. And this fact, in turn, depends on whether the mother was domiciled there at the time the order granting the father visitation and communication rights was passed.

That the children and mother were not domiciled in Maryland is certainly not in doubt. So far as the children are concerned, the record indicates that they were domiciled in Florida several months before the Maryland divorce action was instituted; that they remained in Florida throughout these proceedings; and that they are still there.

The record, with regard to the mother, shows that she took the children to Florida with the intention of finding and establishing a new and permanent home for herself and them, that she promptly declared under oath her intention of becoming a bona fide and legal resident of Florida and that she and the children have continuously resided there ever since. The record shows further that she immediately purchased a home in De-Land obtained a homestead exemption on it, became a taxpayer on real, personal and tangible personal property in the state and registered as a voter therein; that she enrolled the children in the public schools and summer enrichment programs of Volusia County and in the church school of the Episcopal Church in DeLand of which she is a member; that her automobile is registered in Florida and that she holds a Florida motor vehicle operator license; that she has sold her former home in Montgomery County and has advised the election officials therein to strike her name from the rolls. It is also shown that the Florida court, in entering the final decree awarding the care and custody of the children to the mother, found that she (as well as the children) had been a "permanent bona fide resident" of Florida and had been physically present therein continually from June 17, 1965, the day after she arrived in the state to take up residence.

The domicile of children, ordinarily, is the same as that of both or one of the parents. In the case of a separation or divorce, the domicile of a child is that of the parent to whom legal custody has been awarded; if custody has not been determined or fixed, it reposes in the parent with whom the child resides; and if it lives with neither of the parents, the child retains the domicile of the father. *Ross v. Pick,* 199 Md. 341, 86 A. 2d 463 (1952). Also see *Taylor v. Taylor,* 246 Md. 616, 229 A. 2d 131 (1967) and *Rethorst v. Rethorst, supra.*

The domicile of a parent, or parents, however, is always determined by his or her place of residence coupled with intention that it be permanent and not temporary. In *Shenton v. Abbott,* 178 Md. 526, 15 A. 2d 906 (1940), at p. 530, "domicile" is defined as "that place where a man has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place

he has, whenever he is absent, the intention of returning." The same definition is quoted in *Lee v. Green*, 195 Md. 462, 468, 73 A. 2d 889 (1949) and *Shapiro v. Marcus*, 211 Md. 83, 85, 124 A. 2d 846 (1956). In *Shenton, Lee* and *Shapiro* it was also stated that in order to effect a change of domicile, there must be an actual removal to another habitation, coupled with an intention of remaining there permanently or at least for an unlimited time. And in *Shenton* and *Lee*, but not in *Shapiro*, it was said that while a person may have several residences, he can have only one domicile at a time and that the essential fact that raises a change of abode to a change of domicile is the absence of any intention to live elsewhere.

While the general rule is that in the absence of a decree of separation or divorce the domicile of a wife is the same as that of the husband, *Whiting v. Shipley*, 127 Md. 113, 96 Atl. 285 (1915), the wife may acquire a separate domicile of her own when she has been abandoned or forced to leave the husband or a divorce or separation action is pending. See *Rumbel v. Schueler*, 236 Md. 25, 202 A. 2d 368 (1964) ; *Bennett v. Bennett*, 197 Md. 408, 79 A. 2d 513 (1951). In every case, however, it is the intention of the person making the change of domicile that is most important but no definite duration of residence is required for a person to acquire a domicile. *Harrison v. Harrison*, 117 Md. 607, 84 Atl. 57 (1912) ; *Shapiro v. Marcus, supra*.

The father relied on *May v. Anderson*, 345 U. S. 528 (1953), to support his contention that the Maryland court had jurisdiction to modify the Florida custody decree. That case, in which the Wisconsin decree, awarding the father custody of children living in Ohio with the mother without having personal jurisdiction over her, was stricken because the Ohio court did not have to give full faith and credit to the Wisconsin decree, is distinguishable from this case in that the validity of the Florida decree, awarding custody of the children to the mother (over whom the Florida court had jurisdiction), was not, and could not be, attacked in the Maryland court. The father also relied on *Halvey v. Halvey*, 330 U. S. 610 (1947), but the case at bar in that the Maryland court had jurisdiction over both parents but not the children, is distinguishable from *Halvey* be-

cause the New York court—besides having jurisdiction over the child had jurisdiction over the father (who on the day before the Florida custody decree was signed had taken the child to New York) as well as over the mother (who went to New York and instituted a *habeas corpus* proceeding)—had the same right as the Florida court had, without offending the full faith and credit requirements, to modify the Florida decree to the extent of giving the father visitation rights.

It should also be noted that this was not a case for the application of the continuing jurisdiction rule, adopted in *Berlin v. Berlin, supra,* as the lower court undertook to do, for in order to have a continuing jurisdiction the Maryland court, rather than the Florida court, must initially have had jurisdiction over the children.

Applying the law to the facts and circumstances of this case, it is apparent, inasmuch as the mother as well as the children were domiciled in Florida, that the lower court was required to give full faith and credit to the Florida custody decree and that the failure to do so was a violation of Section 1 of Article IV of the Constitution of the United States. See *Rethorst v. Rethorst* and *Naylor v. Naylor* both *supra;* Restatement, *op. cit. supra,* § 147; Nelson, *op. cit. supra,* §§ 15.32, 33.62.

While this ruling is conclusive of the status of the children *for the present,* the father is not precluded, as the Florida decree indicates, from hereafter seeking modification in a Florida or another court which may obtain jurisdiction. *Taylor v. Taylor, supra.*

There is no reason to consider the subsidiary questions raised by the appeal.

> *Orders of court as to visitation and communication rights and as to contempt of appellant reversed; appellee to pay the costs.*